IRVING FISHMAN vs. LARIMORE S. BROOKS.

Middlesex.   October 10, 1985. — January 30, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Negligence*, Attorney, Expert opinion. *Attorney at Law*, Malpractice, Canons of ethics. *Evidence*, Expert opinion, Relevancy and materiality, Prior inconsistent statement, Judicial discretion. *Practice, Civil*, Failure to make objection, Instructions to jury. *Witness*, Impeachment.

At the trial of a malpractice claim against an attorney based on the unreasonableness of the settlement he had persuaded his client to accept in a personal injury case, expert testimony as to the reasonable settlement value of the personal injury claim at the time it was settled was admissible to show that the attorney was negligent and that his negligence caused a loss to his client. [647-649]

Statement respecting the admissibility at the trial of a legal malpractice case of expert testimony concerning ethical standards governing the conduct of a practicing attorney. [649-650]

At the trial of a malpractice claim against an attorney for negligent representation of the plaintiff in an action to recover for personal injuries sustained when an automobile struck the plaintiff while he was riding on a bicycle, there was no error in the admission of expert testimony by a pharmacist concerning the general side effects, including drowsiness, of a certain nonprescription drug which the driver of the automobile had taken before the accident. [650]

Failure by the plaintiff at the trial of a legal malpractice claim to comply with the procedures provided in G. L. c. 233, § 23, before offering in evidence prior inconsistent statements made by the defendant, who was called as a witness by the plaintiff, did not bar admission of the statements, where the defendant during questioning by his counsel explained his position substantially as if he had been called as a witness on his own behalf. [650-651]

On appeal from judgment against a defendant on claims for legal malpractice and abuse of process there was no merit to the defendant's challenge to the judge's charge concerning the abuse of process claim. [652]

CIVIL ACTION commenced in the Superior Court Department on June 19, 1978. A counterclaim by the defendant was tried before *Andrew R. Linscott*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John B. Connarton, Jr.* (*John Egan* with him) for the plaintiff.

*Thomas Hoffman* for the defendant.

WILKINS, J. This appeal principally concerns the propriety of certain evidentiary rulings in the trial of a counterclaim for malpractice filed by Larimore S. Brooks against Irving Fishman, a member of the bar of the Commonwealth. Brooks persuaded the jury that (a) Fishman was negligent in representing Brooks in an action for personal injuries Brooks sustained when a negligently operated motor vehicle collided with the bicycle he was riding; (b) as a result of Fishman's negligence, Brooks was obliged to settle the personal injury action; and (c) the damages which Brooks should have recovered in that action were substantially greater than the amount of the settlement.

Fishman commenced this action by filing a complaint for declaratory relief against Brooks, who, after the settlement, had notified his health care providers that the case had been settled and they would be paid. Fishman alleged that Brooks had violated the terms of an agreement between them which would have given Fishman, as an additional fee, any amount he saved in negotiating settlements of Brooks's medical bills. Fishman voluntarily abandoned this claim shortly before Brooks filed his counterclaim. In addition to his malpractice claim, Brooks successfully asserted an abuse of process claim based on Fishman's commencement of this action. On our own motion, we transferred Fishman's appeal to this court, and we now affirm the judgment in favor of Brooks.

We need recite the facts only in general terms in order to present the legal issues raised in Fishman's appeal. On the night of September 25, 1975, Brooks suffered serious injuries when a motor vehicle traveling in the same direction struck him as he rode his bicycle in the breakdown lane of Route Nine in Newton. Brooks wore dark clothing, and his bicycle may have lacked proper light reflectors. Shortly after the accident Brooks retained Fishman to represent him.

The jury would have been warranted in finding various facts bearing on Fishman's negligence. Fishman had not tried a case of any sort since 1961. His part-time solo practice mainly involved real estate conveyancing. He did not commence suit until sixteen months after the accident and, for no apparent reason, did not obtain service on the driver defendant for more than ten months after filing the complaint, a delay which, by his own admission, interfered with his handling of the case. Fishman made no effort to examine the motor vehicle or to investigate in any detail what the driver had been doing immediately prior to the accident. He engaged in no useful pretrial discovery. Instead, he relied on information the driver's insurer volunteered. He did not learn, for example, that shortly after the accident the driver had stated that she neither saw Brooks nor the bicycle before her vehicle struck them.

In April, 1978, a Federal District Court judge assigned the case for trial on June fifth. Fishman thereupon consulted an able attorney experienced in personal injury litigation about referring the case to him, but the negotiations failed because Fishman would not agree to an even division of his one-third contingent fee.

In April, 1978, Fishman made a settlement demand of $250,000 on the driver's insurer. At various times the driver's insurer made offers of settlement. Fishman did not know what the available insurance coverage was. He told Brooks that only $250,000 was available when, in fact, $1,000,000 was available. Brooks rejected several offers of settlement, although Fishman had recommended that Brooks accept them. Finally, shortly before trial, after Fishman had told Brooks that he could not win if he went to trial, Brooks agreed to settle his personal injury claim for $160,000, knowing that Fishman was not prepared to try the case.

In the trial of this case, the jury answered special questions concerning the malpractice action. They found that Fishman was negligent in his handling of the personal injury action and that Brooks was damaged thereby in the amount of $525,000. The driver's negligence was 90% and Brooks's negligence was 10% of the contributing cause of his injuries. The jury also

returned a verdict in the amount of $10,000 on Brooks's abuse of process claim.

The judge entered judgment on the malpractice count by reducing Brooks's damages ($525,000) to reflect (a) his contributory fault (10% or $52,500), (b) the amount of medical expenses paid from the settlement ($32,000), and (c) the amount Brooks received personally from the settlement ($90,000) and by allowing interest on the balance. No reduction was allowed for Fishman's counsel fees collected in the earlier action.

An attorney who has not held himself out as a specialist owes his client a duty to exercise the degree of care and skill of the average qualified practitioner. See *McLellan* v. *Fuller*, 226 Mass. 374, 377-378 (1917); *Caverly* v. *McOwen*, 123 Mass. 574, 578 (1878); *Varnum* v. *Martin*, 15 Pick. 440, 442 (1834); *Glidden* v. *Terranova*, 12 Mass. App. Ct. 597, 598 (1981); Barry, Legal Malpractice in Massachusetts, 63 Mass. L. Rev. 15, 17 (1978). An attorney who violates this duty is liable to his client for any reasonably foreseeable loss caused by his negligence. See *McLellan* v. *Fuller, supra; Glidden* v. *Terranova, supra* at 600. Thus an attorney is liable for negligently causing a client to settle a claim for an amount below what a properly represented client would have accepted. See, e.g., *Edmondson* v. *Dressman*, 469 So. 2d 571, 574 (Ala. 1985); *Cook* v. *Connolly*, 366 N.W.2d 287, 292 (Minn. 1985); *Rodriguez* v. *Horton*, 95 N.M. 356, 359-360 (Ct. App. 1980); *Helmbrecht* v. *St. Paul Ins. Co.*, 122 Wis. 2d 94, 117-118 (1985). See generally R. Mallen & V. Levit, Legal Malpractice § 580, at 723-726 (2d ed. 1981). Although properly informed of all the relevant law and facts, an attorney may nevertheless cause a client to settle a case for an amount below that which competent counsel would approve. As the authorities cited above tend to show, such a situation is more theoretical than real. The typical case of malpractice liability for an inadequate settlement involves an attorney who, having failed to prepare his case properly or lacking the ability to handle the case through trial (or both), causes his client to accept a settlement not reasonable in the circumstances.

A plaintiff who claims that his attorney was negligent in the prosecution of a tort claim will prevail if he proves that he probably would have obtained a better result had the attorney exercised adequate skill and care. *McLellan* v. *Fuller, supra* at 378. Brooks's case was tried on this theory, and thus first involved the question of Fishman's negligence in the settlement of Brooks's claim and, second, if that were established, the question whether, if the claim had not been settled, Brooks would probably have recovered more than he received in the settlement. This is the traditional approach in the trial of such a case. The original or underlying action is presented to the trier of fact as a trial within a trial. If the trier of fact concludes that the attorney was negligent, a matter on which expert testimony is usually required (see *Pongonis* v. *Saab, post* 1005 [1985]), the consequences of that negligence are determined by the result of the trial within the trial. Thus, in the trial within the trial in this case, the jury had to determine whether the driver negligently caused Brooks's injury and, if so, the damages Brooks suffered and the comparative fault of Brooks and the driver. On this approach to the trial of a legal malpractice action, except as to reasonable settlement values, no expert testimony from an attorney is required to establish the cause and the extent of the plaintiff's damages.[1]

1. Over Fishman's objection, the judge properly admitted expert testimony from an experienced tort lawyer and an experienced claims adjuster as to the reasonable settlement value of

---

[1] A plaintiff whose case was settled too low because of his attorney's negligence lost a valuable right, the opportunity to settle the case for a reasonable amount without a trial. See *Drury* v. *Butler*, 171 Mass. 171, 175 (1898). Brooks could also have argued, therefore, that he was entitled at least to the difference between (a) the lowest amount at which his case probably would have been settled on the advice of competent counsel and (b) the amount of the settlement. Brooks made no such claim. In such an approach there would be no need for a trial within a trial, but a plaintiff's potential recovery would be more limited than in the traditional approach. See general Mallen & Levit, *supra*, § 580, at 725; Spiegal, Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession, 128 U. Pa. L. Rev. 41, 137-138 (1979); Note, The Standard of Proof of Causation in Legal Malpractice Cases, 63 Cornell L. Rev. 666, 670-671, 679-680 (1978).

the underlying claim at the time it was settled. The attorney testified that such a case normally would have settled for $450,000 to $500,000. The claims adjuster estimated that such a case would have settled for $400,000 to $450,000.

Fishman argues that the settlement value of the underlying action was not a proper measure of damages. Brooks does not assert that it was; rather, he argues that proof of the fair settlement value of the underlying action was an important element of his case against Fishman. If, in spite of Fishman's negligent preparation of the personal injury case, settlement was made in an amount that properly prepared counsel reasonably could have recommended, Brooks would have suffered no loss from Fishman's negligence. Consequently, evidence of the fair settlement value of the underlying claim was admissible to prove not only Fishman's negligence but also that his negligence caused a loss to Brooks. See *Rodriguez* v. *Horton*, 95 N.M. 356, 360 (Ct. App. 1980). In precisely these terms and without objection from Fishman, the judge submitted a special question to the jury as to whether $160,000 was a fair settlement. The reasonableness of the $160,000 settlement was relevant, therefore, and on that question expert testimony was appropriate. See *Williams* v. *Bashman*, 457 F. Supp. 322, 328 (E.D. Pa. 1978); *Duncan* v. *Lord*, 409 F. Supp. 687, 693 (E.D. Pa. 1976); *Warwick, Paul & Warwick* v. *Dotter*, 190 So. 2d 596, 598 (Fla. App. 1966); *Helmbrecht* v. *St. Paul Ins. Co.*, 122 Wis. 2d 94, 116 (1985). Cf. *Worden* v. *Tri-State Ins. Co.*, 347 F.2d 336, 340-341 (10th Cir. 1965); *Jiffy Foods Corp.* v. *Hartford Accident & Indem. Co.*, 331 F. Supp. 159, 160 (W.D. Pa. 1971).

Fishman also contends that admission of evidence concerning the fairness of the settlement was improper because it allowed the jury to impose liability by second-guessing the attorney's judgment. The answer is that no liability would have been imposed for a settlement made within the range of settlement values that an attorney exercising due care would have recommended. Like a member of any other profession, an attorney is not immune from liability for the consequences of a negligent exercise of professional judgment. The absence of

any evidence that the insurer of the defendant in the underlying action would have settled for more than $160,000 is immaterial on the theory on which Brooks presented his case. If $160,000 did not equal or exceed the amount that a nonnegligent attorney would have recommended for settlement, the case should not have been settled.

If Fishman had wished the jury to understand that the experts' testimony was not to be considered on the issue of the damages that would have been recovered in the underlying action, he could have asked for a limiting instruction both at the time the evidence was admitted and in the judge's final charge. He did neither. In fact, the judge instructed the jury on damages as in the typical personal injury tort action without reference to the settlement value of the underlying action.

2. Fishman now challenges the admission of expert testimony from a law school professor concerning the ethical obligations of attorneys in general and of Fishman in particular. At trial Fishman objected successfully to the professor's qualifications to give an opinion on an attorney's standard of care. Fishman advanced and withdrew an objection to the relevancy of expert testimony concerning ethical standards governing the conduct of a practicing attorney. He did not renew his relevancy objection at any time, nor does he argue here an objection to any specific question asked of the professor. There is thus nothing before us requiring appellate review.

We add a brief comment about the relationship between the canons of ethics and an attorney's duty of care to his client. A violation of a canon of ethics or a disciplinary rule (S.J.C. Rule 3:07, as amended through 395 Mass. 1106 [1985]), is not itself an actionable breach of duty to a client. See *Robert L. Sullivan, D.D.S., P.C.* v. *Birmingham*, 11 Mass. App. Ct. 359, 368-369 (1981). As with statutes and regulations, however, if a plaintiff can demonstrate that a disciplinary rule was intended to protect one in his position, a violation of that rule may be some evidence of the attorney's negligence. See, e.g., *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 (1982) (statute forbidding sale of liquor to intoxicated persons intended to protect accident victims); *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 29 (1979)

(worker's compensation statute intended to protect employees); *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976) (building code intended to protect tenants in common areas). Cf. *Beecy* v. *Pucciarelli*, 387 Mass. 589, 590 n.3, 597 (1982) (disciplinary rules not intended to protect client's opponent).

Expert testimony concerning the fact of an ethical violation is not appropriate, any more than expert testimony is appropriate concerning the violation of, for example, a municipal building code. *Perry* v. *Medeiros, supra* at 842. A judge can instruct the jury (or himself) concerning the requirements of ethical rules. The jurors need no expert on legal ethics to assess whether a disciplinary rule was violated. A jury would not be aided, and their function could be impinged upon, by expert testimony in such a circumstance. See *Perry* v. *Medeiros, supra*. Of course, an expert on the duty of care of an attorney properly could base his opinion on an attorney's failure to conform to a disciplinary rule.

3. The judge did not err in admitting, over general objection, testimony from a pharmacist concerning the side effects (e.g., drowsiness) of a nonprescription drug. There was evidence that a defendant in the personal injury action, the driver of the vehicle, had taken the drug before the accident. The pharmacist testified concerning generalities and possibilities and not concerning the specific effect of the drug on the driver in this case. Admission of that evidence as tending to prove the driver's negligence might have been error in the absence of other evidence concerning the influence of the drug on the driver. See *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 32 (1979). That the driver took the drug and that it could cause drowsiness were relevant, however, to the question of Fishman's negligence. Although, in a statement made to her insurer shortly after the accident, the driver had admitted that she was taking medication, Fishman did not learn of the facts concerning the drug before the case was settled.

4. Fishman contends that certain statements admitted as prior inconsistent statements did not satisfy the requirements of G. L. c. 233, § 23 (1984 ed.). Brooks called Fishman to testify as part of his case in chief. Fishman's own counsel then questioned

him extensively in "cross-examination," during which Fishman explained his position substantially as if he had been called as a witness on his own behalf. Thereafter Brooks questioned him again. After Fishman had left the stand, Brooks offered testimony from a prior proceeding in which Fishman had made statements that were inconsistent with statements Fishman made during "redirect" examination.

Fishman objected to the admission of these statements in part on the ground that the offer should have been made while he was on the stand. For the purposes of this case, we accept the objection as adequate to raise Brooks's failure to comply with the condition of G. L. c. 233, § 23, that a witness one "produces" may be impeached by prior inconsistent statements only if the witness has been given an opportunity to acknowledge or deny and, where appropriate, to explain them. Section 23 restricts only the use of prior inconsistent statements by a "party who produces a witness." If Fishman had testified as a witness on his own behalf, Brooks properly could have offered prior inconsistent statements without establishing any foundation for doing so. *Sirk* v. *Emery*, 184 Mass. 22, 25 (1903). *Commonwealth* v. *Shagoury*, 6 Mass. App. Ct. 584, 597 (1978), cert. denied, 440 U.S. 962 (1979). In the circumstances, once Fishman had testified extensively on questioning by his own counsel, § 23 did not restrict the admission of prior inconsistent statements because Brooks effectively was no longer the party who had produced Fishman as a witness.[2]

5. The judge did not abuse his discretion in excluding a photograph said to be of "the scene of the accident, or the

---

[2] Massachusetts R. Civ. P. 43 (b), 365 Mass. 806 (1974), provides in part that where an adverse party is called as a witness, counsel for the adverse party-witness may cross-examine him "only upon the subject matter of his examination in chief." In this case, Fishman's examination by his own counsel exceeded the scope of Brooks's examination of Fishman and in that respect Fishman was offering or producing himself as a witness. Rule 43 (b) permits the impeachment of an adverse party called as a witness "in all respects as if he had been called by the adverse party, except by evidence of bad character." We need not resolve any conflict between § 23 and rule 43 (b) because, in the circumstances, rule 43 (b) authorized Fishman's impeachment and § 23, as construed, does not forbid it.

approximate scene of the accident." The date when the photograph was taken was never established. Other evidence demonstrated the nature of the roadway.

6. Fishman's challenge to the judge's charge concerning the abuse of process claim against him is without merit. Indeed, the charge may have been overly favorable to Fishman because, at one point, the judge instructed the jury that Brooks had to prove not only that Fishman had an ulterior motive in bringing the action but also that Fishman had no basis for bringing the action. Proof of the groundlessness of an action is not an essential element of an action for abuse of process. See *Beecy* v. *Pucciarelli*, 387 Mass. 589, 595-596 (1982); *Dangel* v. *Offset Printing, Inc.*, 342 Mass. 170, 171 (1961). That the person commencing the litigation knew or had reason to know his claim was groundless is relevant, however, as tending to show that the process was used for an ulterior purpose. See *Lorusso* v. *Bloom*, 321 Mass. 9, 10 (1947); *Reardon* v. *Sadd*, 262 Mass. 345, 348 (1928).[3]

*Judgment affirmed.*

---

[3] Fishman does not contend by an independent statement of the issue that the evidence did not warrant a finding for Brooks on the abuse of process count. Fishman's passing allusion to the point in his brief does not qualify as argument calling for us to consider the issue. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).