JOSEPH J. COLUCCI and another[1] vs. ROSEN, GOLDBERG,
SLAVET, LEVENSON & WEKSTEIN, P.C., & another.[2]

No. 86-1202.

Suffolk.    October 19, 1987. — December 2, 1987.

Present: GREANEY, C.J., DREBEN, & SMITH, JJ.

*Attorney at Law,* Malpractice. *Negligence,* Attorney, Expert opinion. *Evi-*
*dence,* Legal malpractice, Professional standards. *Injunction.*

Plaintiffs proceeding against an attorney and a law firm on claims of neg-
ligence could not prevail, in the circumstances, without presenting expert
testimony to establish the standard of care to which the attorney was to
be held [111-112] and to establish that the litigation giving rise to the
malpractice claim probably would have been successful but for the attor-
ney's alleged negligence [112-116].
No evidence at the trial of a legal malpractice action supported a claim that
the attorney engaged in oppressive conduct toward his then client. [116]

CIVIL ACTION commenced in the Superior Court Department
on October 31, 1980.
    The case was tried before *Elbert Tuttle,* J.
    *Erik Lund (Nancy E. Glowa* with him) for the defendants.
    *Steven M. Brody* for the plaintiffs.
    GREANEY, C.J. The plaintiffs brought an action in the
Superior Court against the defendants, a lawyer and his law
firm, alleging malpractice in the handling of an application for
a temporary restraining order. The case was tried to a jury.
The jury returned a general verdict for the plaintiffs and
awarded damages. The defendants have appealed from the
denial of their motion for judgment notwithstanding the ver-
dict.[3] We reverse.

[1] Vincent Marino.

[2] Barry E. Rosenthal, an attorney.

[3] The defendants filed a motion for directed verdict at the conclusion of
the plaintiffs' case and rested. See *Service Publications, Inc.* v. *Goverman,*
396 Mass. 567, 571 n.5 (1986).

On the basis of the plaintiffs' evidence, the jury could have found the following facts. In September, 1977, the plaintiffs purchased an "interest" in a restaurant in Cambridge owned and operated by Marvalee Corporation (Marvalee). They began remodeling the restaurant, which was kept open during the renovations. On November 4, 1977 (a Friday), many employees of the restaurant went on strike and began picketing the premises. On that date, George Garfinkle, Marvalee's president, discussed the strike with the defendant, Mr. Barry Rosenthal, a lawyer and a stockholder in the defendant professional corporation. Garfinkle was acquainted with Rosenthal because Rosenthal represented the owner of the premises occupied by the restaurant and the creditor holding the note and security interest in connection with a sizeable loan to Marvalee. Rosenthal told Garfinkle that his firm could obtain a restraining order on Monday, November 7, to curtail the picketing, which was causing considerable harm to the restaurant's business. Rosenthal set up a meeting for Monday, November 7, 1977, with Garfinkle and the plaintiffs to discuss the matter further. At that meeting Rosenthal stated that "he felt he could get a court order that would stop the strike," and that "he could get it [a restraining order] the next day [Tuesday, November 8]." Rosenthal requested a $1,000 retainer to handle the case. The $1,000 was paid later on Monday and acknowledged in a receipt "as a retainer for legal services."

Rosenthal, who was not a trial lawyer, turned the case over to Mr. Nelson Lovins, another lawyer in the firm, who had considerable experience in general and business litigation. Lovins treated the case as an emergency matter. Together with another lawyer in the firm who had been assigned to assist him, Lovins immediately commenced research and work on the preparation of a complaint (and related materials) to obtain a temporary restraining order.

Lovins had not handled a case of this type before. As part of his preparation, he consulted with a lawyer who held a master's degree in labor law and who practiced in that field in Massachusetts, seeking the lawyer's advice on the handling of the case. By Thursday (November 10), the following docu-

ments had been prepared: a complaint seeking a temporary restraining order and a preliminary injunction (the complaint was brought by Marvalee and Garfinkle as plaintiffs and named the labor union representing the employees and the union's representative as defendants); affidavits of Garfinkle and the restaurant's assistant manager in support of the assertions in the complaint; and a legal memorandum discussing Marvalee's position on the issues in the strike and its entitlement to the relief sought. The pleadings were immediately filed in the clerk's office of the Superior Court in Suffolk County, and service was made on representatives of the union representing the picketing employees and their counsel.[4]

That same day (November 10), Lovins appeared in the motion session of the Superior Court and argued his request for a temporary restraining order before a Superior Court judge. The request was opposed by the union. After argument, the application was denied by the judge and on the ground that a temporary restraining order could be granted only by a three-judge panel convened under G. L. c. 212, § 30. This statute requires the Chief Justice of the Superior Court to designate three judges of that court to hear and determine proceedings involving or arising under G. L. c. 149, §§ 20B, 20C, or 24, or under G. L. c. 214, §§ 6 or 6A. Although Lovins had researched the law, and had consulted with a labor lawyer, he was unaware of the requirements of G. L. c. 212, § 30. The labor law specialist with whom Lovins had consulted also had not mentioned the possible need for a three-judge panel. However, Lovins was aware of the provisions of G. L. c. 214, § 6, which govern the proof necessary to obtain a restraining order or preliminary injunction in a labor dispute.

Lovins procceeded directly from the motion session to the office of the Administrative Justice of the Superior Court, where he obtained an order, pursuant to G. L. c. 212, § 30,

---

[4] It should be noted that Lovins worked throughout under considerable pressure from Garfinkle and the plaintiffs, who called or visited him daily to obtain status reports and to press him to appear in court on the case as soon as possible.

appointing three judges of that court to hear and determine the matter. Lovins was advised, however, that the three-judge panel would not be able to convene for one or two weeks. Lovins then returned to the motion session and argued for reconsideration by the judge of his earlier order on the ground that the judge could, and should, in the circumstances demonstrated by the complaint and affidavits, exercise his general equity power to restrain the picketing, at least until the three-judge panel heard the case. The judge again denied relief on the basis that G. L. c. 212, § 30, deprived him of any authority to issue a temporary restraining order.

Lovins immediately sought review of the motion judge's order pursuant to G. L. c. 231, § 118, first par., in the single justice session of this court. A single justice heard argument on Lovins' petition. According to Lovins' testimony, the single justice expressed the view that, notwithstanding G. L. c. 212, § 30, he might have authority in some special circumstances to issue a temporary restraining order in this kind of dispute. The single justice concluded, however, that no special circumstances had been shown to warrant that relief. Accordingly, the single justice declined to disturb the motion judge's order.

That evening, Rosenthal met with the plaintiffs and Garfinkle and reviewed with them what had occurred that day in court. He then requested an additional payment of $1,000 before "lift[ing] a finger" to pursue the matter further. The plaintiffs refused to pay any further legal fees. Rosenthal and his firm stopped working on the case. By letter dated Monday, November 14, 1977, Rosenthal advised Garfinkle that Marvalee's note was in default, as was the rent due the landlord. (There had been previous instances of delays in payment of obligations to the creditor and the landlord. In those instances, Marvalee had apparently worked out satisfactory arrangements.) On November 16, 1977, possession of Marvalee's assets was taken by Rosenthal's firm under the rights conferred by the agreement securing the note. Rosenthal claimed that the assets were turned over peaceably by Garfinkle in exchange for a promise that Garfinkle would not be held personally liable on his guarantee of Marvalee's

debts. The plaintiffs claimed that the seizure was involuntary. On November 23, 1977, Marvalee filed for bankruptcy.

1. The plaintiffs' basic claims are that the defendants were negligent because (a) they proceeded too slowly in preparing and filing the action in the Superior Court; (b) they were unaware of the provisions of G. L. c. 212, § 30, which led the motion judge to deny the application for a temporary restraining order; and (c) they abandoned the case after the application had been denied when the plaintiffs refused to pay them an additional $1,000 in legal fees.

(a) and (b). To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained, see *Caverly* v. *McOwen,* 123 Mass. 574, 578 (1878); *McLellan* v. *Fuller,* 226 Mass. 374, 377-378 (1917); *Pongonis* v. *Saab,* 396 Mass. 1005 (1985); *Glidden* v. *Terranova,* 12 Mass. App. Ct. 597, 597-598 (1981); that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss, see *McLellan* v. *Fuller, supra* at 378; Nolan, Tort Law § 185 (1979). "But it must not be understood that an attorney is liable for every mistake that may occur in practice, and held responsible for the damages that may result. If the attorney acts with a proper degree of attention, with reasonable care, and to the best of his skill and knowledge, he will not be held responsible. Some allowance must always be made for the imperfection of human judgment." *Stevens* v. *Walker & Dexter,* 55 Ill. 151, 153 (1870). See *Gilbert* v. *Williams,* 8 Mass. 51, 56 (1811). Further, an allegation of malpractice is not self-proving. Expert testimony is generally necessary to establish that an attorney failed to meet the standard of care owed in the particular circumstances, *Pongonis* v. *Saab,* 396 Mass. 1005 (1985), and cases cited, unless the alleged malpractice "is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence". *Ibid.*

The plaintiffs tried this case without presenting expert testimony to establish the standard of care. We think such testimony was necessary to warrant a finding that the defendants

were negligent because Lovins proceeded too slowly in preparing the case or because he was unaware of the provisions of G. L. c. 212, § 30. There is no claim that the task of obtaining a temporary restraining order, in the circumstances shown, constituted the practice of a legal speciality which could not have been handled by a trial lawyer with Lovins' experience in general and business litigation. See generally Mallen & Levit, Legal Malpractice § 253 (2d ed. 1981). See also *Fishman* v. *Brooks,* 396 Mass. 643, 646-647 (1986). The fact, standing alone, that Lovins was dealing with his first case of this precise type would not warrant a finding of negligence. Without expert testimony, the jury could not have inferred that the three days spent by Lovins, after the retainer had been paid, in preparation of the pleadings and supporting papers amounted to inadequate performance. Nor could the jury have inferred on the basis of their own common knowledge that, despite Lovins' research and consultation with a labor lawyer, his lack of familiarity with the provisions of G. L. c. 212, § 30, necessarily established negligence. There was insufficient evidence for the jury to conclude that Lovins had not taken adequate steps, under the urgent time constraints imposed on him, to ascertain the law or that his tactical judgments about how the case should be handled (also considered in light of the urgency claimed by the plaintiffs) were unreasonable. In particular, there was no evidence that a reasonably competent attorney would not have sought a temporary restraining order from a single judge, knowing that a three-judge panel could not be assembled on the spot, or that such an attorney could have obtained the assignment of a three-judge panel under G. L. c. 212, § 30, any more promptly than did Mr. Lovins.

(c). These deficiencies of proof eliminate any liability of the defendants for the first two claims of negligence. The third claim concerns the defendants' refusal to do anything further on the case unless they were paid another $1,000. The claim here is that the defendants acted unreasonably in ceasing work for their clients.

With regard to this claim, there may be substantial problems with the plaintiffs' proof as to the scope of services required

by the retainer paid to the defendants. We pass the discussion of those problems because there is a more obvious difficulty with the plaintiffs' evidence.

We shall assume for purposes of discussion that the defendants acted unreasonably in not providing further legal services that were required of them by the retainer. However, the plaintiffs, if they were to succeed on the claim, were obliged to present evidence that it was likely that they would have obtained from the three-judge panel a temporary restraining order or a preliminary injunction barring the job action. A client in a malpractice action based on an allegation of attorney negligence must show that, but for the attorney's failure, the client probably would have been successful in the prosecution of the litigation giving rise to the malpractice claim. *Glidden* v. *Terranova,* 12 Mass. App. Ct. at 600. The client need not show a perfect claim. But the client must show at least that he has lost a probability of success as a result of the attorney's negligence. See *Fishman* v. *Brooks,* 396 Mass. at 647 & n.1, and authorities cited. In the circumstances of this case, expert testimony to establish this alleged loss was necessary.

Obtaining the relief sought by the plaintiffs in the action before the three-judge panel would have required proof, at an evidentiary hearing, of at least five separate conditions.[5] See

---

[5] General Laws c. 214, § 6, as appearing in St. 1973, c. 1114, § 62, the Anti-Injunction Act governing labor law cases, provides, among other things, the following:

"(1) No court shall have jurisdiction to issue a preliminary or permanent injunction in any case involving or growing out of a labor dispute, as defined in section twenty C of chapter one hundred and forty-nine, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect:—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

generally *Jones* v. *Demoulas Super Markets, Inc.*, 364 Mass. 726 (1974). There was no evidence that these conditions could have been established to persuade the judges comprising a panel established under G. L. c. 212, § 30, that they should exercise their discretion in favor of restraining the picketing. Based on the complaint and affidavits filed by Mr. Lovins, which the plaintiffs' counsel agreed before the jury were well-prepared, it is doubtful whether the three-judge panel would have granted the relief sought.

The plaintiffs argue that Rosenthal's remarks at the November 7 meeting that "he felt [that] he could get a court order," and that "he could get [a restraining order]," satisfied this gap in their proof because the remarks constituted an opinion or an admission by him that emergency or preliminary injunctive relief would have been granted. We do not agree.

Rosenthal, who appears to have been known as a business and commercial lawyer, was not qualified at the trial as an expert on the subject of injunctive relief under the Anti-Injunction Act. His remarks were not a substitute for proof by a properly qualified expert. Further, there was no contention at the trial that the remarks expressed the opinion of an expert, and the judge gave the jury no instruction on opinion evidence.[6]

---

"(*b*) That substantial and irreparable injury to the plaintiff's property will follow;

"(*c*) That as to each item of relief granted greater injury will be inflicted upon the plaintiff by the denial of relief than will be inflicted upon the defendants by the granting of relief;

"(*d*) That the plaintiff has no adequate remedy at law; and

"(*e*) That the public officers charged with the duty to protect the plaintiff's property are unable or unwilling to furnish adequate protection."

There are similar precise and exacting requirements for the issuance of a temporary restraining order in subsections (2), (3), (4), and (5) of § 6.

[6] The judge charged the jury that a lawyer owes his client the duty of reasonable care and skill in the circumstances and that a lawyer has to know the law on the subject matter he is dealing with. The judge then read to the jury the definition of a labor dispute appearing in G. L. c. 149, § 20C(*c*), and left it to the jury to decide whether the underlying action involved a labor dispute. Causation was framed in terms of whether anything done or not done by the defendants had resulted in monetary damages to the plaintiffs. The instructions had the effect of supplying the missing proof and

Nor do the remarks constitute an admission. The testimony simply constituted evidence of Rosenthal's future intentions (namely, that there would be court proceedings seeking a restraining order), and evidence that Rosenthal's law firm ultimately acted in accordance with those expressed intentions. The statement was in no way equivalent to an acknowledgement by Rosenthal, after the denial of the restraining order, that his law firm's representation had been substandard in some way.[7]

Likewise, Lovins' assertion in his pleadings, and arguments in his legal memorandum, that a temporary restraining order was warranted, did not constitute proof that such would have been granted by the panel. Such a conclusion would have the anomalous result of rendering a lawyer liable for fulfilling his role as an advocate of a given position for his client in adversary proceedings. We conclude that this case required that evidence of causation be provided by means of expert testimony.[8] See

---

overlooked the plaintiffs' burden to prove that they could have prevailed on the underlying claim. The instructions were objected to by the defendants' counsel.

[7] We think the plaintiffs' lawyer may have recognized this defect in his proof. The defendants' motion for directed verdict (and subsequent motion for judgment n.o.v.) specifically raised the absence of expert proof on this issue, and the defendants' counsel argued the issue before the judge. The argument was not addressed by the plaintiffs' counsel, who simply took the position that Rosenthal's refusal to do any more work on the case after the defeats in the motion and single justice sessions caused the restaurant to fold. The argument that Rosenthal's statements constituted an expert opinion or amounted to an admission is not made in the plaintiffs' appellate brief and was made only in response to questioning at oral argument. The deficiencies in the jury instructions have already been noted. See note 6, supra. We note also that the case was neither brought, nor submitted to the jury, on the theory that Rosenthal's statement might have constituted an actionable promise to produce a specific result, assuming such an action could lie between client and attorney. Compare Sullivan v. O'Connor, 363 Mass. 579 (1973), permitting an action for breach of contract between a patient and a physician who had supposedly warranted a satisfactory medical result.

[8] This deficiency of expert testimony as to causation applied to the claims of negligence that have been previously discussed (at 1 [a] and [b], supra) in connection with the lack of expert testimony establishing the standard of care. The deficiency furnishes an alternative basis requiring reversal of the judgment on those claims.

*McLellan* v. *Fuller,* 226 Mass. at 377-378; *Siano* v. *Martinelli,* 12 Mass. App. Ct. 946 (1981); *Hurd* v. *DiMento & Sullivan,* 440 F.2d 1322, 1323 (1st Cir.), cert. denied, 404 U.S. 862 (1971). Compare *Fishman* v. *Brooks,* 396 Mass. at 647 (a jury in a malpractice action can decide without expert testimony, on the "trial within the trial," that the plaintiff in the malpractice action would have prevailed in his motor vehicle tort case).

2. The plaintiffs argue on appeal that malpractice was also proved because Rosenthal engaged in "gross and oppressive conduct" and that he was involved in "glaring conflict problems" by reason of his representation of them as well as creditors of Marvalee. There was no evidence at the trial that Rosenthal or his firm violated any canon of ethics or any disciplinary rule of the Supreme Judicial Court. See *Fishman* v. *Brooks,* 396 Mass. at 649-650. The issue of whether Rosenthal had acted oppressively was tried in the context of the claim that he had been negligent after the defeat in the motion session because he did not provide further services under the $1,000 retainer. We have already concluded that the proof was inadequate on that particular claim.

3. We need not reach the other issues that have been argued.

*Judgment reversed.*

*Judgment for the defendants.*