ELIE J. BAGHDADY *vs.* LUBIN & MEYER, P.C., & another.[1]

No. 99-P-829.

Suffolk. March 21, 2002. - June 21, 2002.

Present: LAURENCE, GILLERMAN, & MILLS, JJ.

*Attorney at Law,* Malpractice, Negligence. *Proximate Cause. Evidence,* Legal malpractice. *Negligence,* Attorney at law, Proximate cause. *Practice, Civil,* Instructions to jury, Special questions to jury, Costs, Offer of judgment.

In a legal malpractice action arising out of the defendant lawyers' representation of the plaintiff in litigation over Federal securities claims, the plaintiff, by failing to demonstrate a probability of success on those claims, did not meet his burden of proving that the defendant's negligence was a substantial factor in producing a loss or injury to the plaintiff. [320-323]

At the trial of a legal malpractice action, the judge did not err in declining to rule on a certain immaterial issue, or in her instructions to the jury on issues arising from the defendant lawyers' earlier representation of the plaintiff; however, the judge erred in allowing the defendants' motion for costs, where the plaintiff did not obtain a judgment following his rejection of the defendants' offer. [323-325]

CIVIL ACTION commenced in the Superior Court Department on September 16, 1994.

The case was tried before *Linda Giles,* J.

*Phillip E. Seltzer,* of Michigan (*Donald R. Furman, Jr.,* with him) for the plaintiff.

*Dustin F. Hecker* (*Michael J. Stone* with him) for the defendants.

GILLERMAN, J. On September 16, 1994, the plaintiff brought a legal malpractice claim against the defendants arising out of the defendants' undisputed failed representation of the plaintiff in the prior prosecution ("the prior action") of the plaintiff's Federal securities claims against Prudential-Bache Securities, Inc., and Alan Sachs ("the underlying claims").[2]

---

[1]Philip J. Crowe, Jr.

[2]The plaintiff identified his underlying claims in the prior action as ones of federal unsuitability and unauthorized trading in securities. In his treatise

On January 25, 1999, at the conclusion of a fourteen-day trial, the jury, responding to special verdict questions,[3] concluded that while the defendants negligently represented the plaintiff in the prior action, that negligence was not a substantial factor in producing a loss or injury to the plaintiff.[4] See Mass.R. Civ.P. 49(a), 365 Mass. 812 (1974) (any omitted issue, based on the pleadings or the evidence, is "deemed to have [been answered] in accord with the judgment upon the special verdict"). Judgment was thereupon entered for the defendants.

The central issue at trial of this action was whether the plaintiff met his burden of proving that the defendant's negligence in the prior action was a substantial factor in producing plaintiff's alleged injury.

Upon review of the proceedings below, we conclude that the evidence was sufficient to support the jury's answers to the special questions, and that there is no merit to the plaintiff's remaining arguments regarding the conduct of the trial. Accordingly, we affirm the judgment. However, we vacate the judge's allowance of the defendants' posttrial motion for costs under Mass.R.Civ.P. 68, 365 Mass. 835 (1974).

1. *Summary of facts and proceedings in the prior action.* Our discussion of the issues on appeal requires a summary of the evidence from which the jury could have found that the

---

entitled Fundamentals of Securities Regulation, Professor Louis Loss cites, among numerous sources, the National Association of Securities Dealers (NASD) Rules of Fair Practice § 2310(a), as amended in 1990, for a description of the doctrine of unsuitability: "In recommending to a customer the purchase, sale, or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs." Loss, Fundamentals of Securities Regulation 1012 (4th ed. 2001).

[3] We quote the special verdict questions: "Q.1. Did either defendant . . . negligently represent plaintiff . . . and thereby breach the duty of care that they owed him?" "Q.2. Was the defendant's(s') said negligence a substantial factor in producing a loss or injury to plaintiff . . . ?" The first question was answered, "Yes." The second question was answered, "No."

[4] The procedure adopted by the parties is commonly referred to as a "trial within a trial." That is to say, "[t]he original or underlying action is presented to the *trier of fact* as a trial within a trial" (emphasis added). *Fishman* v. *Brooks*, 396 Mass. 643, 647 (1986). Thus, there is no merit to the plaintiff's argument that the judge should have decided the probable outcome of the prior action.

defendants' failed representation was not a substantial factor in producing a loss or injury to the plaintiff in the prior action. In a legal malpractice case, "[t]he client need not show a perfect claim. But the client must show at least that he has lost a probability of success as a result of the attorney's negligence." *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.,* 25 Mass. App. Ct. 107, 113 (1987). See *Fishman* v. *Brooks,* 396 Mass. 643, 647 (1986) ("[a] plaintiff who claims that his attorney was negligent in the prosecution of a tort claim will prevail if he proves that he probably would have obtained a better result had the attorney exercised adequate skill and care"). The failure to make such a showing in the second part of the trial requires judgment for the defendant.

The plaintiff, who had received a doctoral degree in electrical engineering from the Massachusetts Institute of Technology and was an adjunct professor of engineering at Boston University, engaged Sachs — then employed by Shearson — as his broker in July, 1979. After some discussion, Sachs recommended a program of "covered call" options.[5] In December, 1979, Sachs left Shearson for Bache, and the plaintiff moved his account to Bache to continue dealing with Sachs. The plaintiff continued trading in options until May, 1981, when he closed his account with Bache and opened a new account with Merrill Lynch, where his trading practices continued.[6]

In November, 1981, after suffering substantial trading losses, the plaintiff engaged the defendants to prosecute his underlying claims against Bache and Sachs. The defendant, Philip J. Crowe, Jr., was the attorney in charge of the case. The prior action was commenced in the United States District Court for the District of Massachusetts and discovery proceeded between 1982 and 1986.

The Federal judge in the prior action held a final pretrial conference on June 30, 1986, during which he recommended a

---

[5]"Call" options refer to the agreement by an owner of shares to sell a given number of those shares to a buyer, at the buyer's option, during the stipulated option period and for an agreed price. Here, the options were "covered" because the plaintiff had the stock available to transfer to the purchaser of the options, in the event the purchaser elected to exercise the options.

[6]After adverse financial results in the summer of 1982, the plaintiff filed a complaint, pro se, against Merrill Lynch.

settlement figure of $100,000. The docket entry for July 7, 1986, states that Bache's counsel notified the court that the settlement proposed by the judge was acceptable to Bache.

The last docket entry in the prior action is dated September 11, 1986. The entry states, "Call made to Mr. Crowe re: settlement. Mr. Crowe to confer [with] plaintiff and report back." There were no further docket entries.[7] In fact, the plaintiff had rejected the settlement proposal, and an attorney in the defendants' office testified that she notified the Federal judge's docket clerk that the case "wasn't going to settle." On the facing page of the docket sheet, the following handwritten notation appears: "Closed 6-30-86." Notice of this notation was not given to counsel.

On November 13, 1991, Bache filed a motion for summary judgment. Counsel for Bache had already notified Crowe by letter that the District Court docket sheet "indicates that the case was 'closed' on June 30, 1986." Crowe filed an opposition to the motion, but all the papers regarding the motion were erroneously filed by the Federal judge's clerk, and the motion was never heard.[8]

Crowe admitted that neither he nor any attorney in his firm did anything to determine the status of the case between 1986 (at the final pretrial conference with the Federal judge) and 1991 (when Crowe filed an opposition to Bache's motion for summary judgment). Crowe eventually withdrew his appearance on December 7, 1993.

Seven years after the case was closed, i.e., on November 22, 1993, the Federal judge's court room deputy clerk notified plaintiff's counsel (successor to the defendant, Crowe) of the following, in response to counsel's inquiry:

"[I]t appears that the captioned action was dismissed as having been reported settled by counsel for the parties. Inasmuch as there has been no recorded action in this mat-

---

[7]A July, 1988, entry notes counsel for Bache's change of address.

[8]The summary judgment motion was based on the then-recent United States Supreme Court case of *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U.S. 350 (1991). Soon after the case was released, however, Congress reversed its effect by enacting § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa-1 (Supp. III 1988).

ter since 1986, the court had assumed that the settlement
had been consummated by the parties.

"The court also has no record of ever receiving a mo-
tion for summary judgment or an opposition thereto . . . .

"If you intend to pursue this action, I would suggest
that you file a motion to reinstate it to the active docket
list, with a report to the court as to what happended [*sic*]
to the settlement negotiations as reported to the court in
1986."

There does not appear to be any basis for the deputy clerk's
statement that the case had been reported settled by the parties,
and therefore there does not appear to be any basis for the
judge's assumption that the settlement had been consummated
— if that, in fact, is what the judge had assumed.

On January 12, 1994, successor counsel for the plaintiff, who
had been engaged in November of 1992, filed a motion through
local counsel to reopen the case. Counsel met with the Federal
judge and described the circumstances as counsel understood
them. The judge denied the motion to reopen the case and
refused to consider Bache's cross motion to dismiss for lack of
prosecution, which was then before the judge.

The plaintiff appealed the denial of his motion to reopen his
case. There followed the mandatory appellate settlement process
in the United States Court of Appeals for the First Circuit. The
plaintiff agreed to settle his claim against Bache and Sachs in
consideration of the sum of $50,000, the appeal was dismissed,
and the prior action ended. This legal malpractice case ensued
whereby the plaintiff now seeks to recover the balance of his al-
leged losses from the defendants.

The plaintiff's underlying claims were never brought to trial
in the prior action. There does not appear to have been any
order of dismissal under rule 41.1 of the Local Rules of the
United States District Court for the District of Massachusetts
(1990) (dismissal for want of prosecution). In addition, there
was no final judgment entered under rule 54 of the Federal
Rules of Civil Procedure.

2. *Discussion of the merits of this case.* The negligence of the
defendants in failing to obtain a trial of the plaintiff's case is

not disputed.[9] As noted above, the central issue on appeal is whether the plaintiff met his burden of proof that there was a causal connection between the defendants' negligence and the harm allegedly suffered by the plaintiff. *McCann* v. *Davis, Malm & D'Agostine*, 423 Mass. 558, 559 (1996). See *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass. App. Ct. at 111 (plaintiff must show that attorney's negligence was proximate cause of plaintiff's loss).

Here, the plaintiff needed to establish the required causal connection by showing that, but for the negligence of the defendants in failing to obtain a trial in the prior action, he probably would have been successful in the prosecution of his claims against Bache and Sachs. *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, *supra* at 113. *Fishman* v. *Brooks*, *supra* at 647. See Restatement (Second) of Torts § 431 (1965) ("the actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm"). Absent such a showing, the plaintiff would have failed to prove that the defendants' negligence, in failing to obtain a trial in the prior action, was a substantial factor in bringing about the plaintiff's alleged injury. The judge so instructed the jury.

We summarize the evidence presented in this case from which the jury, in arriving at their negative response to the second question, see note 3, *supra*, could reasonably have concluded that the plaintiff failed to prove that he probably would have established in the prior action, by a preponderance of the evidence, the validity of his claims against Bache and Sachs.

The claims made by the plaintiff in the prior action were that (i) the plaintiff was an unsuitable investor for the covered call options trading recommended by Sachs, and (ii) the securities transactions consummated by Bache for the plaintiff's account were neither authorized nor approved.

The plaintiff's securities expert, Michael Nolan, testified that covered call option writing which Sachs, when employed by Shearson, suggested to the plaintiff and in which the plaintiff continued trading while at Bache, was suitable for a person of

---

[9]Plaintiff makes no claim that the defendants were negligent in the preparation of the prior action for trial.

the plaintiff's age; that the plaintiff was "clearly smart enough to understand the risks of options, of covered call writing" and "smart enough to understand the potential rewards from [covered call writing]"; and "that the National Association of Securities Dealers consider[s] covered call writing to be a conservative option strategy."

The defendant's expert, Henry Ferguson, testified that the plaintiff was "absolutely suitable" to trade in covered call options. "He would have been approved at any firm I've ever worked for or represented . . . [b]ecause he met the criteria. First of all, a covered writing is deemed to be one of the more conservative strategies. He's doing it on a cash basis, meaning he owned the underlying security. . . . . He was financially capable. I believe at the time he was 48 years-old, [and] certainly intelligent . . . ."

There was also evidence presented from which the jury could reasonably have concluded that the plaintiff authorized or approved the transactions at issue, contrary to the plaintiff's claims. For example, the plaintiff acknowledged at trial that Sachs repeatedly spoke with the plaintiff about the options transactions at issue and that the plaintiff authorized every trade except the first one.

The plaintiff also acknowledged that he never looked at the account statements that he received from Bache and that he did not look at the confirmation slips he received from Bache that covered each transaction. Michael Nolan, the plaintiff's expert, added the following testimony. When asked "if [the plaintiff] did not review any of the account statements, any of the confirmations at Shearson or Bache, he was not acting as a reasonably prudent investor should, is that correct?," Mr. Nolan answered, "I believe that's correct. I'm not sure if he was reasonably prudent. That sounds a little legalistic to me. But for his own protection he should do it . . . . I would think an investor would want to read the statements that are sent to him by the brokerage firm because that allows them to see if there is anything in dispute at an earlier time."

In sum, there was sufficient evidence presented in this case for the jury to find that (i) the plaintiff was not an unsuitable investor for trading in covered call options, and (ii) that the

plaintiff did not fail to authorize or approve the securities transactions at issue. It follows that the jury could reasonably have concluded that the defendants' negligence in failing to have the plaintiff's case scheduled for trial was not a substantial factor in the likely unfavorable outcome of his claims against Bache and Sachs. It follows, too, that the dispute about the likely success of the appeal to the United States Court of Appeals for the First Circuit, seeking a trial, is immaterial.

We conclude that the plaintiff's failure to show a probability of success on his Federal securities claims is dispositive of this appeal.

3. *Discussion of plaintiff's remaining arguments.* The plaintiff devoted a substantial portion of his brief to the proposition that the Superior Court judge erred in not ruling on the issue of the likely outcome of the appeal to the United States Court of Appeals in the prior action. We need not reach that issue because the jury's answer to the second special verdict question disposes of the issue. Moreover, the Federal appeal terminated when the plaintiff settled with the defendants in the prior action. The plaintiff presented no evidence at trial, and makes no argument here, that the plaintiff's final settlement with the defendants in the prior action was "too low." See *Fishman* v. *Brooks*, 396 Mass. at 647 n.1.

The plaintiff also challenges the Superior Court judge's instructions concerning the alleged unsuitability of the plaintiff as an investor in covered call options. At trial, the case was submitted to the jury on six questions. The first and second questions are reproduced in note 3, *supra.* The third question, directed to the plaintiff's damages, was only to be answered if the answer to the second question was answered in the affirmative; therefore the third question was properly left unanswered. The fourth, fifth, and sixth questions, directed to the issue of the plaintiff's contributory negligence, were also properly left unanswered. We have been directed to no part of the record that discloses that, before the jury retired, the plaintiff demanded that further questions be submitted to the jury. See Mass.R. Civ.P. 49(a), 365 Mass. 812 (1974). Thus the plaintiff's case, in its entirety, was submitted to, and answered by, the jury in response to two questions: were the defendants negligent, and

was that negligence a substantial factor in producing the plaintiff's loss or injury?

The jury answered the first question in the affirmative, and the second question in the negative. The verdict slip instructed the jury that if the second question was answered in the negative, the jury were to "stop here, sign the verdict slip, and return to the courtroom."

The jury did exactly as instructed. Where the plaintiff failed to request an additional question regarding his suitability, the trial court is deemed to have made a finding on the omitted issue consistent with the judgment on the special verdict questions that were answered, i.e., that the plaintiff was a suitable investor and the negligence of the defendants did not cause any harm allegedly suffered by him. See *Hawco* v. *Massachusetts Bay Transp. Authy.* 398 Mass. 1006 (1986); *Velleca* v. *Uniroyal Tire Co.* 36 Mass. App. Ct. 247, 251 (1994).

In sum, we have carefully reviewed the judge's instructions to the jury in light of the evidence at trial, and we find no prejudicial error. See *Bouley* v. *Reisman,* 38 Mass. App. Ct. 118, 121-122 (1995) ("[a]ppellate courts have traditionally accorded the trial judge considerable discretion [in] framing jury instructions, both in determining the precise phraseology to be used . . . and in determining the appropriate degree of elaboration needed . . . . In testing the sufficiency of a change [*sic*], we will read it as a whole . . . to ascertain whether the judge has clearly, adequately, and correctly explained to the jury the principles that ought to guide and control their action"). There was a fair trial of claims which began more than twenty years ago, and the judgment for the defendants must be affirmed.

After a posttrial motion, the Superior Court judge allowed the defendants' motion to recover their costs under rule 68 (offer of judgment). See Mass.R.Civ.P. 68, 365 Mass. 835 (1974). In brief, rule 68 provides that when the recipient of the offer (the offeree) does not (as the plaintiff here did not) accept the offer of judgment within ten days after service of the offer, the offer is deemed to have been withdrawn. "If *the judgment* exclusive of interest from the date of offer *finally obtained by the offeree* is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer" (emphasis added).

In *Delta Air Lines, Inc.* v. *August*, 450 U.S. 346, 352 (1981), the United States Supreme Court, emphasizing the clause of the rule which we have emphasized in the preceding paragraph, held that "it is clear that [Rule 68] applies . . . only to judgments obtained by the plaintiff. It therefore is simply inapplicable to this case because it was the defendant that obtained the judgment."

Here, the plaintiff failed to obtain a judgment, and his appeal was subsequently dismissed following settlement. "In construing [the Massachusetts Rules of Civil Procedure] we follow the construction given to the Federal rules 'absent compelling reasons to the contrary or significant differences in content.' " *Van Christo Advertising, Inc.* v. *M/A-COM/LCS*, 426 Mass. 410, 414 (1998). We see no compelling reason or significant difference in content that would oblige us not to follow *Delta Air Lines, Inc.*, and therefore we are guided by the United States Supreme Court's interpretation of the rule. "[T]he plain language of Rule 68 confines its effect to . . . [a] case . . . in which the plaintiff has obtained a judgment for an amount less favorable than the defendant's settlement offer." *Delta Air Lines, Inc.* v. *August*, 450 U.S. at 351.

The order allowing the defendants' posttrial motion for costs is vacated, and a new order is to enter denying the motion. The judgment in all other respects is affirmed.

*So ordered.*