JUDITH MEYER *vs.* AUGUSTUS F. WAGNER, JR.

Barnstable. January 4, 1999. - April 16, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Negligence,* Attorney at law. *Attorney at Law,* Malpractice, Negligence. *Contract,* Settlement agreement. *Judicial Immunity. Evidence,* Legal malpractice, Hearsay, State of mind, Expert opinion. *Consumer Protection Act,* Waiver. *Practice, Civil,* Parties, Instructions to jury.

In a legal malpractice action, the plaintiff properly preserved her appellate rights with respect to the judge's allowance of the defendant's motion to strike the plaintiff's negligence claim. [417-418]

This court adopted the rule of *Grayson* v. *Wofsey, Rosen, Kweskin, & Kuriansky,* 231 Conn. 168, 175 (1994), stating that, in a legal malpractice action, where a client establishes that an attorney, in advising on the settlement of a divorce action, has failed to exercise the degree of skill and care of the average qualified lawyer, and that the failure has resulted in loss or damage to the client, the client is entitled to recover even if the settlement has been approved by a judge. [418-420]

Principles of judicial estoppel were not applicable to a plaintiff attempting to demonstrate that her judicially-approved agreement to settle a divorce action was the result of her then attorney's malpractice. [420]

At the trial of a legal malpractice action, the judge's preclusion, on the defendant's motion, of the plaintiff's claim of negligence, and curtailment of the plaintiff's evidence, which would have supported her assertion that the defendant deviated from the appropriate standard of care in preparing and executing a settlement agreement in the plaintiff's divorce case, prejudiced the plaintiff and a new trial was required. [420-423]

There was no error in a judge's ruling in favor of the defendant on a plaintiff's claim, in connection with a legal malpractice action, that the defendant had violated the provisions of G. L. c. 93A. [423-424]

At the retrial of a legal malpractice action, the judge's instructions to the jury should make it clear that an objective standard should be applied in deciding whether the defendant was negligent [424]; and the judge should consider whether the defendant's law partners were necessary parties to the defendant's counterclaim within the meaning of Mass. R. Civ. P. 19 (a) [425].

CIVIL ACTION commenced in the Superior Court Department on July 24, 1992.

A pretrial motion to strike a negligence claim was considered by *Elizabeth B. Donovan,* J., and the case was tried before her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*George C. Deptula* for the plaintiff.

*James R. DeGiacomo (Judith K. Wyman* with him) for the defendant.

GREANEY, J. The principal issue raised in this appeal is whether a client who agreed to the settlement of a divorce action on the advice of her attorney later may properly assert a claim for malpractice against the attorney in the preparation and execution of the settlement agreement.

The plaintiff brought this action against the defendant in the Superior Court claiming that he had committed malpractice in the legal services rendered to her in connection with her divorce and claims for equitable division of property. She maintained that, due to the defendant's mishandling of the proceedings, particularly in preparing and executing a settlement agreement governing distribution of the marital assets, and in failing to institute necessary ancillary proceedings to secure the assets, she did not obtain appropriate levels of alimony, child support, and a fair distribution of the assets, including assets connected to numerous parcels of real estate and businesses owned by her former husband. The plaintiff also asserted a claim for violation of G. L. c. 93A, § 9.[1] The defendant filed a counterclaim in which he sought to recover approximately $200,000 for the legal services rendered and expenses.

The judge considered a number of pretrial motions, including the defendant's motion to strike the claim of negligence in the

---

[1]The complaint also included breach of contract, promissory estoppel, and misrepresentation claims. At the close of the evidence in the plaintiff's case, the judge entered a directed verdict in the defendant's favor on the promissory estoppel and misrepresentation claims. The plaintiff opposed the defendant's motion. Although the plaintiff's notice of appeal encompassed all of her claims, the plaintiff did not address either of these claims in her brief, except stating in her conclusion that she is entitled to a "new trial on all issues." Otherwise, she makes no argument that the judge erred in granting a directed verdict on these claims. The plaintiff has not met the standards for appellate argument set forth in Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), and we consider the claims waived. See *Miga* v. *Holyoke*, 398 Mass. 343, 345-346 n.5 (1986). At the close of all of the evidence, the judge entered a directed verdict in the defendant's favor on the contract claim, which the plaintiff neither opposed nor objected to. Accordingly, the plaintiff has waived this claim. See *Kinchla* v. *Welsh*, 8 Mass. App. Ct. 367, 372 (1979); Mass. R. Civ. P. 46, 365 Mass. 811 (1974).

preparation and execution of the settlement agreement.[2] After a pretrial hearing, the judge allowed the defendant's motion, relying primarily on the fact that the Probate Court judge in the divorce proceeding had approved the settlement agreement.

After a trial on the plaintiff's claim that the defendant was negligent in failing timely to initiate adequate prejudgment and postjudgment measures properly to secure the assets covered by the agreement, and on the defendant's counterclaim, a jury returned verdicts on both claims in favor of the defendant, and assessed the plaintiff $70,000 in attorney's fees.[3] The judge entered a separate memorandum of decision on the plaintiff's G. L. c. 93A claim in which she concluded that there was no violation of the statute. The plaintiff appealed from the judgments entered, and we transferred the case to this court on our own motion.

We conclude that the judge should not have struck the plaintiff's negligence claim concerning the defendant's alleged malpractice in preparing and executing the settlement agreement. There must be a new trial on that claim. Because the evidence relating to that claim is inextricably intertwined with the plaintiff's claim that the defendant failed properly to secure the marital assets and with the defendant's counterclaim, a new trial on those claims is also necessary.

1. There was evidence of the following. In November, 1987, the plaintiff commenced a divorce proceeding against her husband, a real estate developer.[4] The first attorney hired by the plaintiff obtained temporary orders. The orders restrained the

---

[2]This motion was, in form and substance, a motion in limine. We shall retain the designation given the motion by the parties.

[3]The jury answered, "No," to each of three questions:

> "Q.1. Was [the defendant] negligent in securing sufficient pre-judgment assets for [the plaintiff]?

> "Q.2. Was the defendant negligent in securing sufficient post-judgment assets for the plaintiff?

> "Q.3. Was the defendant negligent in attempting to collect the payments set forth in the separation agreement?"

[4]The husband was engaged in the real estate development and construction business. He would purchase, subdivide, and develop large tracts of land through various business entities in which he owned, or shared an ownership interest with friends in the construction business.

husband from transferring, except in the normal course of business, or dissipating, marital assets and his ownership interests in numerous trusts and corporations which held title to the properties he was developing.

In March, 1988, the plaintiff retained the defendant, and the law firm in which he was a partner, to represent her in the divorce. The husband was uncooperative throughout the divorce proceedings. At the outset, the plaintiff explained to the defendant that he needed to be aggressive because her husband was inclined to be obstructive. In addition to the defendant, two other attorneys with the firm worked on the plaintiff's case, and separate experts and an investigator were also retained to assist in preparation.

During the discovery phase of the litigation, the defendant's law firm sent out requests for admissions and interrogatories, and scheduled depositions of the husband and his business associates. The husband failed repeatedly to comply with various requests for production of documents. The defendant and his associates at the law firm testified that they were involved in tracing the husband's assets, some of which were in the husband's name, and easily ascertainable, and others of which required extensive discovery to determine his interests. The depositions were intended to identify the husband's interests in the various corporate entities under which he did business, as well as to discover the properties held by those entities. The depositions established that ascertainment of ownership was onerous, making it difficult to trace the sources of the husband's finances. The defendant further testified that, when the plaintiff acquired information concerning the husband's property holdings and business ventures, she would inform either the defendant or one of his associates, who would then attempt to substantiate the information.[5]

Due to the husband's failure to cooperate, the defendant ostensibly developed a strategy by which he would file for contempt when the husband violated a court order. It was believed that the sanction of jail would have a chilling effect on the husband and would result in his compliance with the order. In May, 1989, the husband was found in contempt for failing to

---

[5]The plaintiff had some familiarity with her husband's business enterprises. She accompanied him on inspections of developments, and was aware of real estate he had acquired in Florida, as well as personal property, such as automobiles, financed through his business.

pay for the children's education and for not paying the mortgage on the family home, and he was sentenced to serve thirty days in jail. The husband then paid all outstanding obligations.

On the eighth day of trial, the plaintiff, on the advice of the defendant, agreed to a settlement. On July 27, 1989, the Probate Court judge ordered the entry of a judgment of divorce which incorporated the settlement agreement. The defendant described the agreement's provisions to the Probate Court judge, and the parties acknowledged to the judge that they accepted the agreement. The judge stated that the agreement was "fair," and that the parties had "the best of professional advice that anybody can get."

The settlement agreement required, among other provisions, that the husband pay the plaintiff $250,000 in cash within one hundred days; and $100,000 in July, 1990, which, if not paid, would increase to $150,000 in July, 1991. The husband was obligated to sell the marital home at 5 Cranberry Lane, Sandwich, and a neighboring two and one-half acre parcel at Blueberry Lane. The husband held title to both properties, valued at $2 million and $800,000 respectively.[6] He was to pay the plaintiff $600,000 on the earlier of the sale of the Blueberry Lane parcel or December 31, 1989. Although the agreement also required the husband to provide mortgages to the plaintiff on both properties, the mortgages were never executed.[7] The plaintiff testified that she was urged by the defendant to enter into the settlement agreement even though she had expressed concerns about security and her husband's control over the assets.

In September, 1989, the husband placed an advertisement for the Cranberry and Blueberry Lane properties in The Boston

---

[6]At the time of the divorce, the Cranberry Lane real estate was encumbered by a mortgage with a principal balance of approximately $500,000, and the parcel had a blanket mortgage of $600,000.

[7]The plaintiff contended that the defendant failed to prepare the mortgage documents required by the agreement. The defendant did not present the husband mortgages at the time the divorce judgment was entered. The defendant testified that the husband failed to show up for an agreed meeting at the registry of deeds a month later to execute mortgage documents he had prepared. He further testified that he gave the documents to the husband's attorney. The defendant's time records do not reflect preparation of such documents at that time, although time records from January, 1990, reflect ten hours for that purpose. The defendant did not disclose to the plaintiff that he had failed to obtain mortgages on the properties.

Globe, under the heading "Forced Divorce Sale." The sale prices were listed as $1.5 million and $750,000 respectively. The advertisement stated that "no reasonable offer will be refused," and that the properties were "priced for quick sale." The plaintiff testified that, after bringing the advertisement to the defendant's attention, she reiterated her concerns about security, but he never disclosed to her that mortgages on the properties had not been perfected.

Ten days after the husband failed to pay the initial $250,000, the defendant filed a complaint for contempt. The husband then executed a purchase and sale agreement for the marital home, with a purchase price of $1.125 million. The buyer paid a deposit of $250,000, the return of which was secured by a $250,000 mortgage on the Cranberry and Blueberry Lane properties granted to the buyer by the husband. The husband thereafter satisfied the payment owed to the plaintiff.

When the husband failed to pay the $600,000 to the plaintiff when due, the defendant again filed a complaint for contempt and requested attachment on the Cranberry Lane and Blueberry Lane properties. A hearing was scheduled on the contempt, and the attachment was granted.

At the closing on the marital home, the plaintiff released her attachment on the marital home, but not on the Blueberry Lane parcel. To secure payment of the $600,000, she received two mortgages on commercial properties owned by the husband in Sandwich, which were subject to other outstanding mortgages. Of the $75,000 net proceeds from the sale of the marital home,[8] the plaintiff obtained approximately $8,000 for her legal fees, and approximately $15,000 was placed in escrow, which she ultimately received.[9]

Before the contempt hearing in April, 1990, the husband sought to release the attachment on the Blueberry Lane property so that he could sell it. He represented to the Probate Court judge that the purchase price for the property was $450,000. The defendant successfully argued to the court that the true

[8]At the closing, the first mortgage was paid, one-half of the blanket mortgage was paid, and the buyers' mortgage was discharged.

[9]The plaintiff negotiated with the buyers for the purchase of the contents of the home, for which they offered to pay $75,000 and the broker would pay $5,000 to cover the difference between the offer and the plaintiff's requested $80,000. The plaintiff received the money from the buyers, but not from the broker.

sales price was $700,000, but the husband had structured the sale to appear otherwise. The husband was found in contempt and sentenced to thirty days in jail. A single justice of the Appeals Court stayed the judgment.

In November and December, 1990, attachments were sought and granted on all of the husband's business properties. At the same time, the prospective buyers of the Blueberry Lane parcel decided not to proceed with the purchase. The plaintiff testified that she expressed to the defendant her concerns that the husband would allow the parcel to be foreclosed on, but the defendant failed to take any action. The bank holding the first mortgage foreclosed and acquired title to the Blueberry Lane parcel, extinguishing the plaintiff's attachment and interests.

The parties prepared appellate briefs for the appeal from the contempt judgment, but the Appeals Court's decision, in which it concluded that the husband was entitled to a hearing on his claim of inability to pay the plaintiff, was not rendered until March, 1991. Shortly thereafter, the husband filed for bankruptcy protection.

The husband did not otherwise meet his obligations to the plaintiff under the agreement, and other than the initial $250,000, the plaintiff did not receive any other monies due her pursuant to the agreement. At the time of his death in September, 1992, the husband owed the plaintiff $750,000 which was never paid.[10]

2. The plaintiff first contends that the judge improperly allowed the defendant's motion to strike her claim of negligence in the preparation and execution of the settlement agreement. We agree.

The defendant argued that the plaintiff's acceptance of the settlement agreement in open court, in the absence of fraud, should bar her from subsequently maintaining a malpractice action. The defendant presented two grounds to the judge in support of his argument. First, he urged the judge to adopt a rule preventing a dissatisfied plaintiff from commencing a malpractice action following a marital settlement agreement which the plaintiff had agreed to, unless the plaintiff could establish that she was fraudulently induced to enter into the settlement agreement, see *Muhammad* v. *Strassburger, McKenna, Messer, Shilo-*

---

[10]The children received approximately $400,000 in life insurance death benefits.

*bod & Gutnick*, 526 Pa. 541, 546, cert. denied, 502 U.S. 867 (1991). Second, the defendant maintained that the plaintiff was precluded by the doctrine of judicial estoppel from maintaining her malpractice action. The plaintiff argued that the ruling sought by the defendant on the first ground was inconsistent with the better view on the question expressed by other jurisdictions and inconsistent with our decision in *Fishman* v. *Brooks*, 396 Mass. 643, 646 (1986), where we concluded that an attorney may be liable for malpractice by failing to prepare a case properly and causing a plaintiff to accept an unreasonable settlement.

At the hearing on the motion to strike, the judge focused on whether the husband's properties were identified as assets in the settlement agreement. After establishing that the properties were covered by the agreement, the judge struck the plaintiff's negligence claim concerning the agreement's preparation and execution, ruling that, because the Probate Court judge in the divorce case had engaged in a colloquy pursuant to *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85 (1984), no further inquiry could be permitted into the settlement agreement itself.[11]

Before discussing the correctness of this ruling, we must decide a procedural issue. Counsel for the defendant maintained during oral argument of the appeal that the plaintiff did not preserve her rights with respect to the judge's ruling on the motion to strike because the principal complaint raised by the plaintiff at the hearing on the motion was the defendant's failure adequately to secure the marital assets. The defendant also stated in his appellate brief that, during the hearing, the plaintiff was unable to direct the judge to any property or other interest owned by the husband that the defendant and the plaintiff were not aware at the time the settlement agreement was signed.

The transcript of the pretrial hearing discloses that, while counsel for the plaintiff discussed issues concerning inadequate security, he also raised issues concerning the defendant's negligence in preparing and executing the settlement agreement.

---

[11]*Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 91 (1984), holds that separation agreements which establish the mutual financial and property rights and obligations of a husband and wife, including the division of marital assets, are valid and binding if a Probate Court judge determines, at the time of entry of a judgment of divorce nisi or thereafter, that the agreement was free of fraud and coercion, and fair and reasonable at the time of the judgment, and that the parties agreed on the finality of the agreement.

Meyer *v.* Wagner.

In addition, the plaintiff's complaint adequately raised all of the relevant issues, as did her opposition to the defendant's motion to strike. Furthermore, in the parties' joint pretrial memorandum, the plaintiff detailed the evidence she expected to present at trial on the issue of negligence in the preparation and execution of the agreement, and what she expected to prove with that evidence. The memorandum also listed the expert witnesses that she intended to call on the issue, and following descriptions of the qualifications of the experts, the plaintiff referred to her answers to the defendant's interrogatories in which she detailed the general subject matter and substance of their expert testimony.

The plaintiff's claim of negligence with respect to preparation and execution of the settlement agreement was properly raised before the judge, and the plaintiff's counsel preserved her rights on that issue by making an objection at the time of the judge's ruling, challenging the judge on the scope of the ruling throughout the trial, and making detailed offers of proof in the course of the trial when the judge precluded introduction of evidence bearing on the issue.

We next discuss the grounds urged by the defendant in support of the judge's order allowing the motion to strike. Although the settlement in *Fishman* v. *Brooks, supra,* involved a tort claim which did not require judicial approval, the principles stated in that case logically apply to a marital settlement agreement approved by a judge, and, with appropriate proof, a plaintiff would be entitled to a trial on a claim that his or her attorney had not exercised adequate care and skill in reaching such an agreement. *Id.* at 647. We decline to adopt the rule advanced by the defendant, which even he concedes only Pennsylvania follows,[12] and which has been expressly rejected by a number of courts. See *Grayson* v. *Wofsey, Rosen, Kweskin,*

[12]In subsequent decisions, the Pennsylvania courts have limited the rule of *Muhammad* v. *Strassburger, McKenna, Messer, Shilobod & Gutnick,* 526 Pa. 541, 546-547, cert. denied, 502 U.S. 867 (1991). *Muhammad* held that a plaintiff who had agreed to a medical settlement could not bring a malpractice action unless she could establish that she had been fraudulently induced to enter into the settlement. In *McMahon* v. *Shea,* 547 Pa. 124, 131 (1997), the Pennsylvania Supreme Court upheld a lower court decision limiting the rule to cases involving facts similar to those in the *Muhammad* case. The rule continues to apply where an attorney's negligence concerns the "exercise of judgment regarding an amount to be accepted or paid in settlement of a claim," but does not apply to a failure to "advise the client properly about

& *Kuriansky*, 231 Conn. 168, 174 (1994) (*Grayson* v. *Wofsey*); *Prande* v. *Bell*, 105 Md. App. 636, 653 (1995); *Baldridge* v. *Lacks*, 883 S.W.2d 947, 952 (Mo. Ct. App. 1994); *McWhirt* v. *Heavey*, 250 Neb. 536 (1996); *Ziegelheim* v. *Apollo*, 128 N.J. 250, 267 (1992). See also *Callahan* v. *Clark*, 321 Ark. 376 (1995) (failure to value marital business and depose husband could support legal malpractice claim for an inappropriate settlement); *Worton* v. *Worton*, 234 Cal. App. 3d 1638 (1991) (failure to investigate and discover pension plan assets in divorce); *Malfabon* v. *Garcia*, 111 Nev. 793 (1995) (entry into settlement, even after consultation with an independent attorney, does not preclude a client from maintaining legal malpractice action); *Helmbrecht* v. *St. Paul Ins. Co.*, 122 Wis. 2d 94 (1985) (divorce settlement could be attacked in malpractice action, even where judge testified that he would not have awarded more had the error not been made).

The better rule, which we adopt, is that established in *Grayson* v. *Wofsey*, *supra* at 175, where the Connecticut Supreme Court addressed malpractice claims similar to those raised by the plaintiff in this case, and decided that "a different result [from the usual malpractice rule on settlements] is [not] required because a judge had approved the settlement of the plaintiff's marital dissolution action." That court held that, where a client establishes that his or her attorney, in advising on the settlement of a divorce action, has failed to exercise the degree of skill and care of the average qualified lawyer, and that the failure has resulted in loss or damage to the client, the client is entitled to recover even if the settlement has received judicial approval. In adopting this rule, we caution that an attorney will not be held to be a guarantor of a favorable result. An attorney who exercises the requisite skill and care will be protected from liability for pursuing reasonable strategies that ultimately fail. See *id.* at 174. "The law demands that attorneys handle their cases with knowledge, skill, and diligence, but it does not demand that they be perfect or infallible, and it does not demand that they always secure optimum outcomes for their clients." *Id.*

well established principles of law and the impact of an agreement upon the substantive rights and obligations of the client." *McMahon* v. *Shea*, 441 Pa. Super. 304, 312 (1995). See *Wassall* v. *DeCaro*, 91 F.3d 443, 449 (3d Cir. 1996) (applying Pennsylvania law and holding that the *Muhammad* decision would not bar a legal malpractice claim after settlement where an attorney "has neglected his role as steward, hopelessly delaying, and perhaps prohibiting, the system from properly resolving his client's case").

at 177, quoting *Ziegelheim* v. *Apollo, supra* at 267. Further, an attorney's settlement recommendation will not be malpractice simply because another attorney, or even many other attorneys, would not have made the same recommendation under the circumstances. See *Prande* v. *Bell, supra* at 656.[13]

We also reject the defendant's contention that the plaintiff is precluded from asserting her negligence claim based on principles of judicial estoppel. The principle that a party maintaining a position in one judicial proceeding is not permitted to assume a contrary position in a subsequent judicial proceeding concerning the same subject, see *East Cambridge Sav. Bank* v. *Wheeler*, 422 Mass. 621, 623 (1996), cannot be logically applied in these circumstances where the plaintiff is attempting to show that her position in the divorce action was the result of the defendant's malpractice. To apply estoppel in the way the defendant suggests would shield him from possible malpractice without inquiring whether the malpractice claim has merit. This would create the anomaly of permitting possible wrongdoing by an attorney, of which the plaintiff had no knowledge, to constitute the basis for barring a later claim by the plaintiff that may have merit.

3. We now consider whether a new trial is required on the negligence claims. The defendant maintained that a new trial on his alleged negligence in the preparation and execution of the settlement agreement should not be ordered because the evidence the plaintiff sought to introduce on that claim was presented to the jury, although "in a different form." The record indicates that the plaintiff did introduce evidence on the precluded claim due to the interrelationship between proof on that claim, and her claim that the defendant failed to obtain adequate prejudgment and postjudgment security to protect her interests. Nonetheless, the judge's ruling limited the jury to consider the evidence only as to questions concerning the defendant's alleged negligence in securing sufficient prejudgment and postjudgment assets to ensure satisfaction of the settlement agreement, and in attempting to collect payments called for by the agreement. The effect of the judge's ruling was twofold. First, by substantially curtailing the plaintiff's evidence

---

[13]The defendant additionally urges us to reject malpractice claims like the plaintiff's unless it has been specifically alleged that the attorney's settlement recommendation was one that no reasonable attorney would have made. We reject this argument.

on the excluded claim, the jury did not hear evidence that may have influenced their decision on the claim that was tried. Second, the ruling prevented the jury from considering any of the plaintiff's contentions about the defendant's alleged negligence in preparing and executing the agreement itself.[14] The lines between the two claims are somewhat blurred, but we are satisfied that the judge's ruling had the effects just described, and, assuming the plaintiff had the proof to support her claim of negligence in the preparation and execution of the agreement, a matter we next discuss, caused her prejudice.

The plaintiff's expected evidence (which the jury did not hear) would have supported her assertion that the defendant deviated from the appropriate standard of care in preparing and executing the settlement agreement, and in providing an inadequate settlement. The evidence appeared in offers of proof from three witnesses, practitioners in the field of family law who could qualify as experts, and who would testify to the particular ways in which the defendant departed from the appropriate standard of care. Among other matters, these witnesses would testify that the value of the plaintiff's interest in the marital assets was not realized due to the defendant's mishandling of her case. In particular, they would testify that the defendant's failure properly to value the husband's business interests and related assets resulted in the defendant's recommendation of a settlement which was inadequate in amount relative to the actual value of the assets that were available for

---

[14]Following the judge's ruling striking the plaintiff's claim, plaintiff's counsel asked for clarification on the ruling. The following exchange took place:

COUNSEL FOR THE PLAINTIFF: "Assuming our experts say 'had you attached earlier preceding the time of the divorce, that would have caused a different outcome in the case or a more favorable settlement,' . . . that case is still permitted, I gather?"

THE JUDGE: "No, what is permitted is that those assets would have been preserved for satisfaction of the settlement that was entered into. . . . [W]e're not going to reopen the underlying agreement that was executed between [the plaintiff] and her husband, but you can, because of the fact that it was not satisfied . . . you can pursue the avenues to show that it should have been secured, could have been secured, and if it had been secured, would have reaped what she was entitled to, pursuant to the agreement."

inclusion in the property division. They would further testify that the defendant's negligent failure to undertake a reasonably diligent investigation of the husband's interests left the Probate Court judge unaware of information critical to a determination whether the settlement was fair and reasonable.

The three witnesses would additionally testify that the defendant's failure to include pertinent provisions in the agreement to ensure collectability and security for payment of the plaintiff's share of the marital assets substantially diminished her ability to obtain the money she was to receive under the agreement. According to the plaintiff's witnesses, the omitted provisions included (a) pledges of other assets of the husband or the corporate entities identified in the agreement for satisfaction of the plaintiff's share in case of the husband's default; (b) requirements that the marital home be sold for a minimum set price, and in a commercially reasonable manner, with a right of review and approval by the plaintiff of the terms and conditions of any sale; (c) suitable protections in the event of the husband's bankruptcy[15]; (d) a requirement that payment of the initial $250,000 not be drawn from the sale of the Cranberry Lane or Blueberry Lane properties, because those properties were the security for payment of the subsequent $600,000; and (e) a provision that the plaintiff receive interim alimony to enable her to maintain her standard of living in the event the husband defaulted on his obligations under the agreement.

The plaintiff's witnesses also would testify that the defendant

[15]Throughout the divorce proceedings, the husband apparently threatened the plaintiff that he would file for bankruptcy protection to prevent her from realizing her share of the marital property. The plaintiff claims that despite the defendant's awareness of the husband's threats, the defendant failed to include provisions in the settlement agreement to protect her in case of such an eventuality. Whether the defendant acted below the appropriate standard of care by failing to structure the agreement in anticipation of bankruptcy is a proper subject for expert testimony, as is the defendant's contention that the exclusion of provisions intended to protect the plaintiff from the husband's bankruptcy does not constitute negligence because such provisions ultimately may not be enforced by the bankruptcy court. We point out that whether provisions in marital settlement agreements for support, property distribution indemnification, third-party payments, and so forth are dischargeable or not dischargeable in bankruptcy present complicated questions for a bankruptcy court to resolve. With a properly drafted settlement agreement, many of these provisions may be nondischargeable. See generally Gallet, Bankruptcy and Matrimonial Cases: It's Not the End of the Road, 38 Judges' J. 26, 28-31 (1999).

acted below the relevant standard of care, and compromised the plaintiff's rights under the settlement agreement, by allowing the plaintiff to sign an agreement that included provisions (a) releasing her claims on the husband's interests in various corporate entities without a pledge of assets to secure the payments to be paid to her; (b) releasing her claims for fraud that might exist in connection with the husband's diversion or transfer of assets; (c) deferring payment of the $100,000 due in July, 1990, to July, 1991, in the event of the husband's default, rather than maintaining the husband's obligation to pay the $100,000 in July, 1990, plus an additional $100,000 penalty due in July, 1991; and (d) requiring the plaintiff to pay her own counsel fees. The plaintiff's witnesses would further testify that it was below the appropriate standard of care for the defendant to have failed to draft a life insurance trust naming the plaintiff as trustee. Because the judge's ruling prevented the jury from hearing some or all of this evidence, and from considering the plaintiff's claim concerning the defendant's alleged negligence in preparing and executing the agreement, a new trial is required on the negligence claims.[16]

4. We conclude that the claims under G. L. c. 93A do not need to be retried. The judge specifically reserved the G. L. c. 93A claims for herself and made detailed findings of fact and rulings of law. The judge found that, in the plaintiff's claim letter under G. L. c. 93A, § 9 (3), she described the defendant's "unfair and deceptive practices" as "(1) failing to obtain adequate prejudgment security; (2) failing to protect her from the threat of bankruptcy by obtaining a reasonable settlement which could be enforced; (3) failing to record the mortgages and provide adequate security at the time of the divorce; (4) failing to do complete asset checks and verify the ownership of assets; and (5) failing to protect her and the children from abuse and distress." None of these allegations appears on their face to fall within the concepts of unfair or deceptive acts.

The judge's comment that the negligence claims were heard by the jury should not be interpreted as an abandonment of the

---

[16]The plaintiff also argues that the judge erred in striking her claim that the defendant's negligence in handling issues of custody and visitation entitles her to damages for emotional distress. We need not decide whether emotional distress damages are recoverable in a legal malpractice action. The plaintiff does not provide any proof that the defendant's acts or omissions in this regard were below the requisite standard of care. There was no error in the judge's exclusion of this claim.

judge's specific reservation to herself of the G. L. c. 93A claims. Certainly her detailed findings indicate the contrary. Furthermore, her correct ruling that "[a]n unfair or deceptive act requires more than a finding of negligence" underscores her conclusion that nothing in the plaintiff's G. L. c. 93A claims suggests an unfair or deceptive act but instead sounds in negligence.

The overwhelming weight of the evidence in this trial dealt with allegations of negligence. The information in the plaintiff's offer of proof on the precluded claim concerning the defendant's failure to follow up on information he received or to take certain action state issues as to possible negligence. The fact that there may have been some testimony that may have supported a finding of unfairness or deception, which the judge was free to disbelieve, does not warrant our ordering a new trial on the G. L. c. 93A claims.

5. We briefly discuss the issues that may arise at retrial.

(a) An attorney's negligence is based on an objective standard, and whether the attorney acted in good faith in representing a client has no bearing on liability. Although an attorney is not liable for every mistake that may occur in practice, see *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass. App. Ct. 107, 111 (1987), and an error in judgment does not necessarily constitute a basis for liability, a subjective good faith exercise of judgment or an honest belief will not protect an attorney from an otherwise negligent act or omission. See generally R.E. Mallen & J.M. Smith, Legal Malpractice § 18.8, at 586-588 (4th ed. 1996). Accordingly, the judge's instructions to the jury should make it clear that an objective standard should be applied in deciding whether the defendant was negligent.

(b) There was no error in the judge's instructions to the jury on the issue of causation. To prevail on a claim for legal malpractice, the plaintiff must show that the attorney's breach of duty was the proximate cause of the damage or loss she sustained. See *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, supra. See also *McCann* v. *Davis, Malm & D'Agostine*, 423 Mass. 558 (1996).

(c) The plaintiff sought to introduce a financial statement allegedly prepared by the husband two months after judgment was entered in the divorce as a declaration of a deceased person under G. L. c. 233, § 65. The judge did not abuse her discretion

Meyer *v.* Wagner.

in excluding the statement based on her conclusion that the statement had not been made in good faith. It will be for the judge at retrial to decide whether that hearsay evidence may be admitted, if the plaintiff can overcome the initial reason for its exclusion and establish other foundation requirements.

(d) There was no error in the judge's admission of certain statements made by Probate Court judges during conferences in the divorce proceedings. The statements were made in the presence of the plaintiff. They are indicative of the states of mind of the plaintiff and the defendant concerning prejudgment attachment of the marital assets.

(e) It will be for the judge at retrial to decide whether to qualify as an expert the plaintiff's witness who would testify to the values of the husband's real estate projects, and whether evidence concerning the sales and value of the husband's business activities may be admitted.

(f) The defendant's failure to name his partners in the law firm did not entitle the plaintiff to judgment in her favor on the counterclaim. The judge on retrial should consider whether, as the plaintiff claims, the defendant's partners were necessary parties to the counterclaim within the meaning of Mass. R. Civ. P. 19 (a), 365 Mass. 765 (1974), and if so, the judge may permit their joinder as plaintiffs in counterclaim.

6. The judgment entered on the order granting the defendant's motions for directed verdicts is affirmed. The judgment entered on the G. L. c. 93A claim is affirmed. The judgment entered on the jury verdict is reversed, and the case is remanded to the Superior Court for retrial of the negligence claims in accordance with this opinion.

*So ordered.*