Haggerty, J.
Findings of Fact
The plaintiff, C.W. Keller & Associates Inc. (“Keller”), is in the custom cabinetry and woodworking business. In 1988 and 1989, the plaintiff subcontracted with general contractor Leonard Getty (d/b/a L&G Contracting) (“Getty”) to provided custom cabinetry and furniture to a professional office building in Worcester. The office building was then under construction at the direction of New Entity Realty, Inc.(“New Entity”) and various doctors who had office space in the building, including Dr. Jon. B. Liland (“Liland”). The plaintiff was unable to collect full payment for these goods and services. The plaintiff retained the defendant, Attorney Albert Cullen (“Cullen”), of the law firm of Cullen and Butters, to assist him in collecting his overdue compensation. Cullen introduced Keller to his associate Judi Sanzo, who would also work on the plaintiffs case. Keller informed Cullen and Sanzo that he wanted to be advised of the status of his case and to receive copies of all documents filed on his behalf.
1. Keller v. New Entity and Getty
On July 5, 1989, Cullen and Sanzo filed suit in Worcester Superior Court against New Entity and Getty pursuant to the mechanic’s lien statute, G.L.c. 254. The plaintiff sought a mechanic’s lien on the construction project. On August 2, 1989, summary judgment entered against New Entity and Getty. On June 21, 1991, the Appeals Court reversed the Superior Court judgment and entered summary judgment for both New Entity and Getty.[1] As grounds, the Appeals Court held that the plaintiffs claim did not fulfill the prerequisites for maintaining a claim under the mechanic’s lien statute. A subcontractor’s claim must be based on an underlying written contract and the summary judgment record did not contain evidence of a legally enforceable written contract between Keller and Getty. Cullen did not seek leave to appeal the decision of the Appeals Court. However, on January 10, 1992, Susan Correia, another associate of Cullen, filed with the Appeals Court a motion to amend the court’s memorandum and to strike Getty from the court’s order on the basis that Getty had not appealed the entry of summary judgment against it at the Worcester Superior Court. Initially, the plaintiff was under the mistaken impression that the Appeals Court decision would be appealed. That impression was subsequently rectified by Correia via correspondence with the plaintiff.
On December 6, 1991, Susan Correia also filed a separate civil action in Worcester Superior Court against New Entity to collect the plaintiffs fee on theories of quantum meruit and breach of contract. On January 30, 1992, New Entity filed a Rule 12(b)(6) motion to dismiss this suit on the grounds of res judicata in light of the Appeals Court decision. On February 7, 1992, the Worcester Superior Court dismissed the plaintiffs complaint because neither Correia nor Cullen filed an opposition to the defendant’s motion to dismiss.
On April 30, 1993, the Worcester Superior Court issued a notice of docket entry in the original 1989 action against New Entity and Getty. On May 10,1993, Cullen and Correia moved to vacate that entry of judgment pursuant to Rule 59(e) and to file an amended complaint against New Entity in the origmál 1989 complaint to include counts for breach of contract, quantum meruit, U.C.C. and c. 93A violations.[2] On July 9, 1993, the Worcester Superior Court denied that motion after a hearing. The Court subsequently denied the plaintiffs motion for reconsideration on October 8, 1993.
2. Keller v. Dr. Liland and Getty
On July 5, 1989, Cullen and Sanzo also filed suit in Worcester Superior Court against Dr. Liland (“Li-land”) and Getty to collect the plaintiffs fee (Exhibit 4A).[3] This suit was filed pursuant to G.L.c. 254 seeking a mechanic’s lien on Liland’s office condominium. On August 23, 1989, judgment entered for Liland on cross motions for summary judgment.[4] On September 11, 1989, the plaintiff filed a notice of appeal to the Appeals Court. After a hearing, the Appeals Court vacated summary judgment and remanded the case to the Superior Court for trial. In 1991, Correia filed a new civil suit in Westborough District Court against Liland alleging quantum meruit and breach of contract claims. On January 13, 1992, Liland filed a motion to dismiss the action. On January 21, 1992, the defendant’s motion to dismiss was allowed. The original 1989 complaint, which was remanded to the Superior Court, by the Appeals Court, was scheduled for trial in 1993. Subsequently, plaintiffs new counsel, Dallas Haines settled the case against Liland for $6,000.
Throughout the course of the defendant’s representation of the plaintiff against New Entity, Liland and Getty, the plaintiff expressed to the defendant that he did not feel he was being adequately advised of the state of his case. Plaintiff requested copies of submissions filed on his behalf as well as clarification of the state of his cases. In 1994, the plaintiff consulted present counsel regarding the defendant’s handling of his cases. Subsequently, the plaintiff filed the instant complaint based on the defendant’s representation of the plaintiff.
DISCUSSION
1. G.L.c. 93A Violation
Under. G.L.c. 93A, §2, “unfair methods of competition and unfair or deceptive acts or practices in the *506 conduct of any trade or commerce are hereby declared unlawful.” G.L.c. 93A, §11 provides a remedy for a business person who suffers financial or property loss due to use of an unfair method of competition or an unfair or deceptive act or practice by another business.[5] To meet its burden in a G.L.c. 93A, §11 claim, the plaintiff must show that both parties are engaged in trade or commerce. Slaney v. Westwood Auto Inc., 366 Mass. 688 (1975); Lantner v. Carson, 374 Mass. 606 (1978); Massachusetts Farm Bureau Fed’n, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722 (1989). A person is defined to include, “natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." G.L.c. 93A, §1(a). Both parties satisfy this definition. Trade or commerce includes, “advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed... and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth. G.L.c. 93A, § 1(b). The plaintiff is a corporation. The practice of law constitutes trade or commerce for purposes of c. 93A. Brown v. Gerstein, 17 Mass.App.Ct. 558 (1984); Tetrault v. Mahoney, 425 Mass. 456 (1997). Thus, the threshold requirements for a Section 11 claim have been met.
In evaluating a G.L.c. 93A, §11 claim, this Court assesses “(1) whether the practice ... is at least within the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether [the actions of the defendant] caused substantial injury to the [plaintiff).” PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). Section 11 of Chapter 93A does not define what conduct rises to the level of an unfair or deceptive act. Therefore, in deciding questions of unfairness under G.L.c. 93Athis court must examine the “nature of[the] challenged conduct and the purpose and effect of that conduct as the crucial factors in making a G.L.c. 93A fairness determination.” Massachusetts Employers Insurance Exchange v. Propac-Mass, Inc., 420 Mass 39, 42-43 (1995).[6]
The defendant’s actions do not rise to the level of unfair and deceptive trade practices actionable under the statute. The plaintiff claims that the defendant negligently handled the plaintiffs case, failed to adequately inform the plaintiff of the development of his case, and intentionally deceived the plaintiff regarding the status of his case to shield himself from liability. However, the evidence reflects that the defendant was negligent in handling the plaintiffs underlying cases. Additionally, the defendant was negligent in failing to update the plaintiff regarding the status of his cases, but there is no evidence that the defendant intentionally deceived the plaintiff to bar future legal action against him. The conduct of the defendant simply does not amount to “immoral, unethical, oppressive, or unscrupulous behavior” against which the statute is designed to protect. PMP Associates, Inc., supra; Massachusetts Employers Insurance Exchange, supra (nature and purpose of the challenged conduct are crucial factors in determining c. 93A violation). “An unfair or deceptive act requires more than a finding of mere negligence ...” Meyer v. Wagner, 429 Mass. 410, 424 (1999). Consequently, this Court holds that the defendants conduct does not violate c. 93A, §11.
2. Plaintiffs Motion for award of costs in accordance with Rule 54(d) and (e)
The plaintiff moves for costs related to the favorable jury award including expert witness fees and deposition costs. The defendant opposes only those costs related to expert witnesses and deposition fees.
(A) Unopposed costs: the Mass.R.Civ.P. 54(d) provides that, “Except where express provision therefor is made either in a statute of the Commonwealth or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs ...” Accordingly, the plaintiff shall recover the following costs in conjunction with Rule 54(d): (1) filing fees, summons copy fee ($192.00); (2) service fees ($ 138.28); (3) copying costs ($3 7.90); (4) subpoena fees incurred in nonparty depositions ($234.00); (5) costs of court ordered mediation ($250.00); (6) trial subpoenas and trial charts ($400.87). This totals $1253.05 in costs for the plaintiff.
(B) Expert witness fees; The plaintiff moves for expert witness fees totaling $2,850.00. The defendant correctly argues that the expert witness fees must be calculated at the rate of $6.00 per day in accordance with G.L.c. 262, §29; Waldman v. American Honda Motor Co., 413 Mass. 320, 322 (1992) (“The amount of taxable witness fees is governed by G.L.c. 262 , §29. We conclude that this limitation applies to all witnesses, including experts.”). The plaintiffs have provided evidence that their expert worked on the case on 18 days. Consequently, the plaintiff may recover $108.00 for expert witness fees.
(C) Deposition costs: the plaintiff moves for costs of deposition transcripts for the following witnesses totaling $1,455.35: (1) the plaintiff; (2) Christopher Cutler (non-appearance); (3) Christopher Cutler; (4) Robert Lampert; (5) Linda O’Malley; (6) Allen Kraus; and (7) Jon Liland. The defendant argues that Mass.R.Civ.P. 54(e) provides costs for the taking of depositions, but not for copies of the transcripts from depositions taken by other parties or where no deposition is taken but a charge is incurred for non-appearance. Specifically, the defendant opposes the plaintiffs claim for $558.25 in costs for a copy of the transcript of the plaintiffs deposition which was taken by the defendants and $130.00 incurred by the nonappearance of Christopher Cutler.
Mass.R.Civ.P. 54(e) provides that “the taxation of costs in the taking of depositions, including audio-vi *507 sual depositions, shall be subject to the discretion of the court, but in no event shall costs be allowed unless the court finds that the taking of the deposition was reasonably necessary ...” I find that the costs incurred by the plaintiff in taking the depositions of Christopher Cutler, Robert Lambert, Linda O’Malley, Allen Kraus and Jon Liland were reasonably necessary in preparation of the plaintiffs case. Noting that the defendant has not opposed these costs, the plaintiff is awarded $767.10 as costs associated with these depositions. Additionally, the plaintiff is allowed the $558.25 for a transcript of his deposition and $130 for the non-appearance of Christopher Cutler as costs associated with the taking of depositions. Contrary to the defendant’s argument, the language of Rule 54(e) does not limit costs associated with taking a deposition solely to the party who has taken the deposition. Moreover, the plaintiff is entitled to the reasonable cost of the stenographer’s attendance at a deposition even if the witness did not appear. Both costs were reasonably necessary to the taking of the deposition. In total, the plaintiff is awarded $1,455.35 as costs associated with the depositions.
ORDER
For the foregoing reasons, it is ORDERED that the plaintiffs claim pursuant to G.L.c. 93A, §11 is DISMISSED. It is further ORDERED that the plaintiff is awarded costs in the total amount of two thousand, eight hundred and sixteen dollars and forty cents ($2,816.40).

At some point after summary judgment entered at the Superior Court, Judi Sanzo left the firm of Cullen & Butters and joined the firm of Morisi & O’Connell. She continued to work on Keller’s case and filed the appellate brief on its behalf for Cullen & Butters.

Correia continued to participate in the representation of the plaintiff, despite the fact that in February of 1993 she left the firm of Cullen & Butters and formed the partnership of Gindes & Correia.

Cullen and Sanzo also filed suit against two other doctors, Dr. Hunter and Dr. Jones, for cabinets installed by the plaintiff in their units of the Worcester office building. As a result of these suits, Drs. Hunter and Jones paid the plaintiff approximately $39,000 for their cabinets.

On October 10, 1989, plaintiff filed a request for default pursuant to Rule 55(a) as to defendant Getty, who had received service of process on July 20, 1989. On April 18, 1990, plaintiffs motion was allowed and Getty was defaulted. On April 23, 1990, plaintiffs motion for entry of final and separate judgment as to Getty was allowed and a judgment against Getty was entered in the amount of $9,502.35 with interest and costs, including attorneys fees.

G.L.c. 93A, §11 provides, in pertinent part, as follows: “Any person who engages in the conduct of trade or commerce and who suffers any loss of money or property, real or person, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two, may, as hereinafter provided, bring an action in the superior court ... for damages . . .”

In Propac-Mass. Inc. the Supreme Judicial Court criticized as “uninstructive” the previously used “level of rascality" test set out in Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). Similarly, the Court rejected the “rancid flavor of unfairness" test established in Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992).