McDonough, Edward J., J.
After a jury verdict finding the defendants to have committed legal negligence and awarding the plaintiff $100,000 in damages, the defendants filed a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial. The defendants challenge the verdict as being against the weight of the evidence and argue that the verdict and award was improperly grounded in sympathy and speculative damages.
After a hearing at which both sides submitted memoranda and oral argument, the defendants’ Motion for Judgment Notwithstanding the Verdict is allowed.
BACKGROUND
This is an action for legal negligence. The underlying facts relevant to this decision can be stated as follows. The defendant attorney (“Ryan”) assisted the plaintiff client (“Brissette”) in estate planning, representing her with respect to the transfer of assets from Brissette and her (now late) husband to other members of the family in order to best avoid costly healthcare liens in the event of the necessity of long-term care. The jury found that Ryan, notwithstanding Brissette’s inferential desire to maintain a possessory interest in her home (“the properly”), negligently advised Brissette not to retain a life estate in the property reasoning that this would subject the properly to a Medicaid lien should Brissette or her husband ever need long-term care. The expert testimony was that while Ryan’s advice not to retain the life estate would have been prudent just a few years earlier due to a change in law which could indeed expose property transferred with a retained life estate to a Medicaid lien, Ryan was unaware that by the time he met with the Brissettes, the law had been changed back so that a life estate could once again be retained by a trans-feror without subjecting the property to a Medicaid lien. Instead, the Brissettes financed the transfer of the property in fee simple to two of their children (“Paul and Cynthia”), who agreed to permit the Brissettes to live on the property for life rent-free.[2] Ryan, however, testified that he had also advised the Brissettes to insist—simultaneous with the transfer—on getting a deed back from Paul and Cynthia to be held in escrow in the event the Brissettes ever deemed it necessary to take back the property. Ryan insists that the Brissettes, after conferring with their children, decided they did not want or need to take a deed back in escrow because they trusted Paul and Cynthia. Briss-ette denied that Ryan recommended that she and her husband take a deed back in escrow for their protection, insisting that Ryan simply advised they would just have to trust Paul and/or Cynthia never to evict them. Ryan denied giving the Brissettes—or any other client during his many years in practice—legal advice simply to “trust” someone to do or not do something.[3] This dispute aside, both Paul and Cynthia testified emphatically that they would never evict Brissette and, as of the date of this decision, they have not attempted to do so.[4]
Once Brissette discovered that Ryan had erred when he advised her and her late husband not to keep a life estate in the property, she retained attorney Stanley Szlachetka and sought to reform the deed to the property in the Hampden Probate and Family Court. By that time, her relationship with her son Paul had soured. Paul opposed the probate court proceeding, threatened sanctions for putative frivolity, and counterclaimed for the value of improvements he had made on the property. The parties ultimately dismissed the probate court action with prejudice and Brissette did not acquire any monies pursuant to the dismissal. Consequently, Brissette initiated this action for legal negligence against Ryan.
DISCUSSION
In ruling on a Motion for Judgment Notwithstanding the Verdict, the judge should “evaluate whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the nonmovant.” McCarthy v. City of Waltham, 76 Mass.App.Ct. 554, 560 (2010), quoting O’Brien v. Pearson, 449 Mass. 377, 383 (2007). The grant or denial of the motion for a new trial is discretionary, Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 520 (1989), but a new trial may only be granted when the verdict “is so greatly against the weight of the evidence as to induce in [the judge’s] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.” Turnpike Motors, Inc. v. Newbury Group, Inc, 413 Mass. 119, 127 (1992) (quotations omitted).
The defendants, in challenging the verdict, contend that Ryan was not causally negligent because his representation has not caused Brissette any appreciable harm. Brissette responds that the negligence has caused her harm, namely, the difference between the value of the life estate she would have had, but for Ryan’s negligence, and the purported tenancy at suffrage she has in its stead, in addition to certain consequential damages.
*543 “[A] cause of action for malpractice ‘does not accrue until a plaintiff knows or reasonably should know that it has sustained appreciable harm as a result of a defendant’s negligence.’ ” Cantu v. St. Paul Cos., 401 Mass. 53, 57 (1987), quoting Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple, P.C., 394 Mass. 265, 268 (1985).“ [Appreciable harm is injury, loss or detriment that is capable of being measured or perceived.” Kennedy v. Goffstein, 62 Mass.App.Ct. 230, 233 (2004) (quotations omitted). In other words, to be appreciable, the harm must have “made a difference” to Briss-ette. SeeJerniganv. Giard, 398 Mass. 721, 723 (1986); Fishman v. Brooks, 396 Mass. 643, 647 (1986).
Brissette submitted to the jury that her sole alleged injury was that, due to Ryan’s advice, she now owns nothing instead of owning a life estate. Stated otherwise, but for Ryan’s negligence, Brissette would have been entitled to certain rights in the property where she now only has actual possession with assurances she will never be evicted. Brissette has not, however, demonstrated how this distinction has made or will make any difference to her. See Jernigan, 398 Mass, at 723. The jury may have found that Brissette’s residency at the property may be subject to certain terms, but Brissette has not provided any evidence tending to show that she intends to violate those terms. While it is true that Paul is now in a unique position, as landlord (with his sister Cynthia) to his estranged mother, he has not abused his position at this time.[5] What is more, Paul and Cynthia testified— without equivocation—that each will never evict Briss-ette, which testimony necessarily estops both from taking the opposite position in a later legal proceeding. See Fay v. Federal Nat’l Mtge. Ass’n, 419 Mass. 782, 787 (1995) (“Judicial estoppel, or ‘preclusion of inconsistent positions’. . . should be employed whenever a litigant is ‘playing fast and loose with the courts.’ [It] is an equitable doctrine which precludes a party from asserting a position in one legal proceeding which is contrary to a position [he or she] has already asserted in another”).
Rather than produce any evidence from which to draw an inference of concrete harm, Brissette makes conclusory, theoretical averments, e.g., “[t]he fact that [Brissette] did not testify that she had any plans to mortgage or rent the house does not mean that she has not suffered damages by having lost the rights to do so.” In other words, Brissette would have the court believe that no proof of actual damages is necessary when an attorney’s error results in a loss of rights. This is not an accurate assessment of tort law.
Brissette has merely proven “negligence in the abstract.” See Inf l Mobile Corp v. Corron & Black/Fair-field & Ellis, Inc., 29 Mass.App.Ct. 215, 217 (1990).
[While there is] some transitory attraction to the idea, once a party becomes aware that it has been exposed to another’s negligence, although damage has not yet materialized, that within three years from that awareness the potentially injured person be required to give unmistakable notice of potential liability to the allegedly negligent party by filing a lawsuit. The target party can then look to its defenses. The countervailing and more powerful consideration, however, which underlies the principle that damage is a prerequisite to a negligence action, is that it is unsound judicial policy to encourage the initiation of litigation in anticipation that liability may materialize ... It is unwise to require persons to take out options on potential negligence actions.
Id. at 220. See also Gore v. Daniel O’Connell’s Sons, Inc., 17 Mass.App.Ct. 645, 647-48 (1984) (“Not only does it offend fairness to require of claimants the gift of prophecy, but it is unsound judicial policy to encourage the initiation of law suits in anticipation that [an injuiy] will manifest itself pendente lite”) (citations omitted).[6] Additionally, an award of these speculative damages could place Brissette in a better position than she would have been had Ryan arranged for her to retain a life estate in the deed, a result offensive to Massachusetts legal malpractice law. See Dearborn v. Dearborn, 15 Mass. 315, 319 (1818) (a creditor cannot recover damages from his attorney for the attorney’s negligent failure to pursue an action against an insolvent debtor).[7]
Further, while it’s likely the jury may have felt a degree of sympathy for Brissette’s unease that (notwithstanding their adamant sworn denials) Paul or Cynthia might someday have a change of heart and seek to evict her, this court notes that emotional distress damages are not recoverable for legal malpractice under the circumstances of this case. This was explained to the jury without any objection by Brissette’s counsel, who at trial did not pursue emotional distress as a damages theory.[8] No appellate level Massachusetts case has extended the legal malpractice scope of recovery to include emotional distress damages. See Meyer v. Wagner, 429 Mass. 410, 423 (Mass. 1999) (declining to decide whether emotional distress damages are ever recoverable for a legal malpractice claim). See also Wheringer v. Powers & Hall, P.C., 874 F.Sup. 425, 428-30 (D.Mass. 1995) (predicting that Massachusetts would only permit emotional distress damages in exceptional circumstances for legal malpractice claims). And even if the Meyer Court anticipated occasions on which emotional distress damages might be recovered for legal malpractice, this uncommonly damage-less transactional matter is not the proper occasion for that remedy.[9]
In sum, there is no set of circumstances from which it may be reasonably inferred that Brissette has suffered or will likely suffer damages due to Ryan’s legal representation of her, thus the jury’s verdict cannot stand, and the defendants are entitled to judgment in their favor. See McCarthy, 76 Mass.App.Ct. at 560. Therefore, the defendants’ Motion for Judgment Not *544 withstanding the Verdict must be allowed and the Motion for New Trial must be denied as moot.
ORDER
The defendants Edward J. Ryan, Jr. and Ryan, Boudreau, Randall, Kirkpatrick & Baker, LLP’s Motion for Judgment Notwithstanding the Verdict is ALLOWED, and judgment shall enter for the defendants. The Motion for New Trial is DENIED.

More specifically, the Brissettes desired to move to the property to be closer to their adult daughter who was expected to take on a caretaker role. The Brissettes’ assets, however, were invested in the family home in South Hadley, so Paul paid for the purchase, which conveyed the property to Paul and Cynthia as joint tenants. Paul recouped his money from the subsequent sale of the South Hadley home. While they had other children, Brissette testified she and her husband decided they wanted only Paul and Cynthia to have ownership of the properly following their deaths.

he jury having found in favor of Brissette on the negligence question, I am compelled to credit Brissette’s testimony on this disputed issue.

On cross examination, Ryan agreed that Paul and Cynthia could evict Brissette at any time. Ryan’s theoretical response may not have been intended by him to be a prediction that any attempted eviction of their mother under these circumstances would necessarily succeed, given the law of constructive trusts, resulting trusts, and unjust enrichment. See Kelly v. Kelly, 358 Mass. 154, 156 (1970); Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 253 (2007) (“A resulting trust typically occurs where ‘a transfer of properly is made to one person and the purchase price is paid by another; in such a case a trust results in favor of the person who furnished the consideration,’ ” quoting Meskell v. Meskell, 355 Mass. 148, 150 (1969)). See also Restatement (Third) of Trusts §7 comment (c), at 89 (2003); 6 A.W. Scott W.R Fratcher, & M.L. Ascher, Trusts §40.1 (5th ed. 2009) all cited in Maffei As to constructive trusts, see Cavadi u. DeYeso, 458 Mass. 615, 635 (2011) (“Where the owner of properly transfers it without declaring any trust, the transferee does not hold the properly upon a resulting trust although the transfer is gratuitous.” [Cite omitted.] The obvious alternative is a constructive trust which “is a flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duly or confidential relationship, mistake, or ‘other circumstances’ in which a recipient’s acquisition of legal title to property amounts to unjust enrich-mentj (emphasis supplied), citing Maffei, at 246. Nevertheless, Ryan’s eviction testimony was uncontroverted evidence that the jury was entitled to believe. See Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 13-14 (1998).

I instructed the jury that, as a life tenant, Brissette would have been entitled to rents and profits from the property and could have sold her interest. The jury was not provided with any evidence tending to show that Brissette would have used, or was even likely to use these rights to her benefit. Even if she were to attempt to do so (e.g., sell or borrow against the value of her life estate) it remains a matter of pure speculation that either Paul or Cynthia would not acquiesce in or otherwise fail to accommodate her every wish. The jury therefore could not have found that Brissette has suffered a detriment by being deprived of a life tenancy.

But see Frankston v. Dermiston, 74 Mass.App.Ct. 366, 374, 375-77 (2009) (appreciable harm, for purposes of malpractice claim, could be attorneys fees accrued in “advancing! ] an issue that is central to the alleged malpractice”); Pelletierv. Chouinard, 27 Mass.App.Ct. 92, 95 (1989) (holding that claimant had malpractice claim once he incurred attorneys fees to ameliorate an error). Nevertheless, Brissette did not present to the jury any evidence of out-of-pocket expenses, presumably including evidence of attorneys fees incurred in remedying Ryan’s alleged malpractice. Brissette’s damages theory at trial did not depend on legal fees incurred either in retaining attorney Szlachetka to file the petition in probate court to reform the deed to the property, or the amount of legal fees Ryan charged Brissette.

The speculative nature of Brissette’s claim is manifested by the jury award in the intriguing amount of $100,000, a number with no apparent basis in any of the evidence before the jury, subverting my express instruction that the plaintiffs damages hot be “determined by speculation, conjecture, surmise, guesswork, or assumption.”

I instructed the jury that “[i]f you determine that the plaintiff is entitled to damages, in deciding the amount of the damages, you may not include any sum for mental anguish [or] emotional distress.”

See “Lawyers Intentionally Inflicting Emotional Distress,” 42 Seton Hall L. Rev. 55, 76-77 (2012) (noting the “majority rule prohibiting plaintiffs from recovering emotional distress damages in attorney malpractice actions”); id. at 76 n. 122, citing Wehringer.