Cratsley, John C., J.
INTRODUCTION
Plaintiff, Y.C. Thomas, Administratrix of the Estate of Chang Chou (“the plaintiff’ or ‘Thomas”), brings this action for breach of contract (Count I), intentional misrepresentation (Count II), negligence (Count III) against Defendant Elton Watkins, III (“Watkins”), and violation of G.L.c. 93A against Watkins (Count IV) and against Defendant Diamond State Insurance Company (“Diamond State”), which was improperly named “United National Insurance Group” (Count V).[1] The dispute arises from Watkins’s legal representation of the plaintiff in a wrongful death action against American Airlines and China Airlines in federal district court in 2000. Thomas asserts that Watkins was negligent in failing to bring a simple negligence claim against American Airlines for their alleged failure to timely divert the aircraft upon which her brother, Chang Chou (“Chou” or “the decedent”), was a passenger. Additionally, Thomas claims that Diamond State, Watkins’s legal malpractice insurance carrier, failed to properly investigate and settle the plaintiffs claims against Watkins. Pursuant to Mass.R.Civ.P. 56, both defendants have now moved for summary judgment on all claims against them, asserting that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. For the following reasons, the defendants’ Motions for Summary Judgment are both ALLOWED.
BACKGROUND
The undisputed facts are as follows.
On December 20-21, 1998, Chou was a passenger on American Airlines Flight 198, which departed San Francisco, CA, at approximately 10:00 p.m. PST with an intended arrival in Boston, MA. Chou was traveling from Taiwan and had previously arrived in San Francisco aboard a China Airlines flight before boarding the connecting flight to Boston. Approximately thirty minutes after Flight 198 departed San Francisco, and after the aircraft had reached cruising altitude, the decedent began exhibiting signs of distress. Kelly Dep. 17:3-21:3, July 31, 2008; see also, Ewert Dep. 19:9-22:21, Oct. 21, 2008. Chou initially complained of nausea and was brought a glass of water, some ice and a washcloth while the flight attendants completed beverage service. Id. Approximately fifteen minutes later, the flight attendants received notice from fellow passengers that Chou had collapsed. Kelly Dep. 21:7-22:3; see also, Bergren Dep. 23:6-24:23, Oct. 13, 2008. Medical assistance was immediately provided to Chou by flight attendants, an on-board passenger physician, Dr. Paul Morrissey, and an on-board passenger nurse, Irena Furina-Gibb. Dep. Morrissey, 13:19-26:4, Nov. 17, 2008; see also, Kelly Dep. 22:6-25:24.
As soon as it was reported that Chou had collapsed, Flight Attendant Nancy Ewert notified the captain that there might be a medical emergency involving one of the passengers. The cockpit crew then began looking into possible locations to which to divert the aircraft if necessary.[2] By this time, the aircraft was approximately 160 nautical miles west of Salt Lake City, cruising at an altitude of 30,000 to 34,000 feet over the Sierra Nevada. Although there were other airports in the area, Salt Lake City was deemed the most viable due to its location, available runways, tower assistance, and the existence of headwinds should they turn the aircraft back towards California. Nelson Dep. 39:1-42:22, July 28, 2008.
Approximately five minutes after their initial notice of potential passenger distress, the cockpit crew received confirmation that there was indeed a medical emergency on-board. Nelson Dep. 43:2-8. At this time, they declared an emergency with air traffic control, set the aircraft to maximum forward speed and requested landing in Salt Lake Cify. Flight 198 landed in Salt Lake City at approximately 12:30 a.m. MST, about forty-five minutes after the cockpit crew received their first notice of Chou’s distress. Nelson Dep. 17:6-13. Upon arrival at the airport gate, medical paramedics boarded the aircraft and removed Chou from the plane. The decedent was transported to a local hospital where he later died.
On December 18, 2000, the plaintiff, representing herself as a pro se litigant with the assistance of *456 counsel, Mark Alpert, filed a complaint against American Airlines (“American”) in U.S. District Court, District of Massachusetts. Civil Action No. 00-12573-RGS. In the complaint, Thomas alleged that Chou “became stricken, endured conscious pain and suffering and then died ... and that proper and timely care and attention would have prevented and/or avoided such death.” See District Ct. Compl. pars. 6-7. Subsequent to filing her complaint, Thomas retained Watkins to represent her in the federal court proceedings.
On June 12, 2001, Watkins filed an Amended Complaint against American and China Airlines asserting liability under the Warsaw Convention.[3] Specifically, it was alleged that Chou had suffered deep-vein thrombosis (“DVT’) and a subsequent embolism as a result of the operations of embarkation or debarkation of the American Airlines aircraft. See District Ct. Am. Compl. par. 15. However, during the course of this federal court litigation, American produced evidence that the decedent had not suffered from DVT and, thus, the theory under which Watkins had agreed to take the case was no longer viable. American’s medical expert witness, Dr. Stanley Lewis, opined to a reasonable degree of medical certainty that Chou had not experienced DVT, but rather suffered from occlusive coronary disease and had suffered a heart attack while aboard the flight in question. See American Fed.RCiv.P. 26(a)(2)(A)-(C) Expert Disclosure, Stanley M. Lewis, M.D. These findings were corroborated by Watkins’s own independent physician, Dr. David Dodson. See Letter from Watkins to Thomas, May 2, 2002, Watkins’s SOF, Ex. 17.
Thereafter, Watkins advised the plaintiff both orally and in writing that he did not believe Thomas’s claims against American were viable and that she would need to obtain successor counsel if she wished to pursue them.[4] After not receiving any response to his letters, Watkins filed a motion and supporting affidavit to withdraw as counsel for the plaintiff on or about August 19, 2002. The U.S. District Court allowed Watkins’s motion on the same day. The plaintiff was granted two consecutive thirty-day periods to obtain successor counsel in order to oppose American’s Motion for Summary Judgment, filed on July 31, 2002. When Thomas was unable to do so in the time allowed, the U.S. District Court granted American’s Motion and dismissed the plaintiffs case. In so doing, the court noted that Thomas “[apparently unable to persuade substitute counsel to enter an appearance . . . [had] sought additional time to oppose the motion for summary judgment. The court granted plaintiff an additional thirty days to do so, but cautioned that no further extensions would be granted. On the last remaining day of the extension, rather than filing an opposition, plaintiff sought a further extension of an indefinite duration to conduct further discovery. Under the circumstances, the court will grant the unopposed motion for summary judgment.” Thomas v. American Airlines, Inc. et al., No. 00-12573-RGS (D.Mass. Nov. 15, 2002) (Stearns, J.).
On August 18, 2005, the plaintiff filed a complaint against Watkins and Diamond State in the Suffolk Superior Court. Civil Action No. 05-03560. Prior to filing, Thomas submitted, through her attorney, a G.L. 93A demand letter to both Watkins and Diamond State on or around October 17, 2003. Diamond State responded via letter, dated November 18, 2003, contesting the validity of the demand letter and the basis for liability and damages alleged therein. See Letter from Attorney Richard Riley to Attorney James Stathopolulos, Nov. 18, 2003, Aff. William P. Mekrut, Diamond State’s Mot. Summ. J., Ex. 18. Additionally, Diamond State requested further information from the plaintiff, if it existed, regarding their insured’s alleged liability. Id. Thomas did not respond to this request. On April 6, 2006, the Superior Court dismissed the 05-03560 action for failure to comply with Mass.RCiv.P. 4(j).[5] In its Memorandum of Decision, the court noted that “[f]or statute of limitation purposes, the time period which this case has been pending is tolled.” As a result, on the same day, the plaintiff filed the instant action, Civil Action No. 06-1500D, against Watkins and Diamond State. Both Watkins and Diamond State filed for summary judgment in February 2009, and the motions were argued before this Court on March 30, 2009.
DISCUSSION
I. Summary Judgment Standard
Under Massachusetts statutory and case law, summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of triable issues. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the moving party does not bear the burden of proof at trial, as is the situation here, the movant must either: (1) submit affirmative evidence negating an essential element of the non-moving party’s claim; or (2) demonstrate that the non-moving party’s evidence is insufficient to establish its claim. Kourovacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. In so doing, the non-moving party may not rely merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. LaLonde v. Eissner, 405 Mass. 207, 209 (1989); Mass.R.Civ.P. 56(e). Finally, the court will interpret all inferences in the light most favorable to the non-moving party. Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995).
*457 II. Watkins’s Motion for Summaiy Judgment
Thomas alleges that Watkins was negligent in his legal representation by failing to raise a cause of action in negligence on her behalf against American during the federal court litigation. Compl. pars. 12-17. To succeed in her legal malpractice claim against Watkins, Thomas must be able to establish, inter alia, that she would have obtained a better result had Watkins exercised adequate skill and care. See Poly v. Moylan, 423 Mass. 141, 145 (1996).[6] In other words, Thomas must be able to show that she would have succeeded in her claims against American Airlines but for Watkins’s failure to bring a simple negligence claim against them. If Thomas cannot do so, her claim against Watkins must fail as a matter of law. Id.; see also, Fishman v. Brooks, 396 Mass. 643, 647 (1986) (noting that “former clients suffer a loss due to an attorney’s negligence only if that negligence is shown to have made a difference to the client”).
A. Refusal to Bring a Negligence Claim Against American Was Reasonable Due to the Applicability of the Warsaw Convention Which Preempted any State or Local Personal Injuiy Claims.
The Warsaw Convention governs all claims made regarding the international carriage of persons, baggage or cargo and preempts any and all local or state law claims that fall within its scope. See Warsaw Convention, Art. 1(1), 49 U.S.C. §40105, and El Al Israel Airlines LTD v. Tsui Yuan Tseng, 525 U.S. 155 (1999). According to Article 1 of the Convention, “(t]ransportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territoiy subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party.” Warsaw Convention, Art. 1(3). Therefore, even though American Flight 198 originated in San Francisco, CA, with an intended destination of Boston, MA, it is deemed “international” under the Convention due to Chou’s multi-national ticket. See Coyle v. P.T. Garuda Indonesia, 363 F.3d 979, 986 (9th Cir. 2004) (noting that the language of Article 1(3) “unambiguously indicates that, at least in certain circumstances, purely domestic air travel can be covered by the Warsaw Convention’s definition of international transportation”). Accordingly, as maintained by Watkins and Diamond State, the plaintiffs claims against American were governed by the Convention to the exclusion of any local or state law negligence claim. El Al Israel Airlines, LTD., 525 U.S. at 161 (holding that recoveiy, “if not allowed under the Convention, is not available at all”).
As discovered by Watkins during the course of the federal litigation, there was never an actionable claim against American under the Warsaw Convention. An airline is liable to a passenger under the terms of the Convention only if the passenger proves that an “accident” was the cause of the injuiy. See Warsaw Convention, Art. 17 (“The carrier shall be liable for damages sustained in the event of death or wounding of a passenger or any bodily injuiy suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking”). In Air France v. Saks, the U.S. Supreme Court held that an “accident” is an “unexpected or unusual event or happening that is external to the passenger.” 470 U.S. 392, 405 (1989). Further, the Court stated that “when the injuiy indisputably results from the passenger’s own internal reaction to the usual, normal and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply.” Id. at 406.
Here, it is undisputed that Chou suffered a heart attack while on-board American Flight 198. Moreover, it is undisputed that a heart attack does not constitute an “accident” as defined by the U.S Supreme Court and cannot subject American to liability under the Warsaw Convention. It is completely internal to the passenger and not the result of any act or omission on the part of the airline. Therefore, as found by the federal court in the underlying action, American was not and is not liable to the plaintiff for the decedent’s death as a matter of law. As Thomas cannot establish that she would have been able to recover any damages from American, her legal malpractice claim against Watkins must fail and Watkins is entitled to summaiy judgment in his favor.
B. Even if the Warsaw Convention Had Not Been Applicable, a Negligence Claim Against American for Failure to Timely Divert the Aircraft Would Not Have Been Viable; Therefore, Watkins Was Not Negligent in Failing to Raise It.
For the sake of argument, I note that even if the Warsaw Convention was inapplicable to the plaintiffs claims against American, no viable negligence claim exists against the airline. The undisputed facts are that Chou became noticeably ill approximately thirty minutes into the flight, after the plane had reached cruising altitude. Shortly thereafter, an on-board doctor rendered emergency treatment with the assistance of an on-board registered nurse and the flight attendants. Once the pilots were notified that there was a definite medical emergency on-board, they diverted the plane to what they determined was the nearest possible airport with appropriate facilities and made an emergency landing. There are simply no credible facts in the summaiy judgment record to support the plaintiffs contention that the crew could have or *458 should have noticed Chou’s illness any sooner or that they could have or should have landed the plane more quickly.[7] There is no factual dispute that in the pilots’ judgment Salt Lake City was the nearest viable airport given the plane’s location, altitude, and the existence of head-winds should the plane have turned back towards California. Therefore, since there is no evidence of a breach of a duly of reasonable care and/or of a causal link between the airline employees’ conduct and Chou’s death, Thomas cannot show that there would have been a successful cause of action in negligence. As such, her legal malpractice claims against Watkins cannot survive summary judgment and Watkins is entitled to judgment in his favor as a matter of law.
III. Diamond’s Motion for Summary Judgment A. Liability Against the Insured, Watkins, for Alleged Legal Malpractice Has Never Been “Reasonably Clear” and, Therefore, Diamond State Did Not Violate G.L. 176D in Failing to Settle or Further Investigate the Claim.
In addition, the plaintiff has sued Diamond State on the grounds that they failed to investigate the case against Watkins, offer settlement, and/or provide the basis for denial of the claim. See Compl., pars. 37-43. General Laws c. 176D subjects an insurer to liability for failure to conduct a reasonable investigation, effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, and to provide a reasonable explanation of the basis for denial of a claim. Mass. Gen. Laws c. 176D, §3(9)(d), (f), and (n). A claim that an insurer failed to conduct reasonable research will only survive if proper investigation would have made liability on the underlying claim reasonably clear and would, therefore, have foreclosed rejection of that claim. See Gaffney v. AAA Life Ins. Co., 4 F.Sup.2d 38, 40 (D.Mass, 1998), citing Van Dyke v. St. Paul Fire and Marine Ins. Co., 388 Mass. 671, 678 (1983). Further, the duty to make a settlement offer arises only when liability is reasonably clear. See Bobick v. U.S. Fidelity & Guaranty Co., 439 Mass. 652, 658 (2003).
As the facts in the summary judgment record establish, Diamond State responded to the plaintiffs 93A demand letter on November 18, 2003. In this response, the insurer, while contesting the validity of the demand letter itself, set forth specific facts and legal authority in support of its position that denial of the claim was proper and that Watkins’s liability was anything but reasonably clear. See citation to Letter, supra p. 6. Moreover, Diamond State requested additional information from Thomas, if any existed, showing liability on the part of their insured. Id. The plaintiff never responded to this request. As was discussed above, there is little to no evidence at the summaiy judgment stage of negligence on the part of Watkins in his representation of the plaintiff. The Warsaw Convention provides the exclusive remedy for personal injury aboard the aircraft in question. When there is no cause of action under the Convention’s terms, the plaintiff is barred from recovery. Even assuming, ar-guendo, that the Warsaw Convention does not apply to American Flight 198, there is no evidence to support a simple negligence claim against the airline for their failure to timely divert the plane. Simply put, without any proof that Thomas had a viable claim against American, Watkins’s liability was never “reasonably clear.” Diamond State was thus justified in denying the claim and refusing to settle and is entitled to judgment in its favor as a matter of law.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motions for Summary Judgment are GRANTED.

All of the causes of action against Watkins are derived from and directly related to his legal representation of the plaintiff and may be considered collectively as legal malpractice claims. Hodas v. Shelburne, Powers & Needham, P.C., 938 F.Sup. 58, 59 (D.Mass. 1996) (holding that plaintiffs claims against his former lawyer for violation of 93A, breach of contract, negligence and legal malpractice, and breach of fiduciary duty could all be properly considered together as legal malpractice claims).

According to J.R. Nelson, the phot of Flight 198, routine procedure mandates that diverting the plane is not necessary until it has been determined that there is an actual medical emergency on-board. See Nelson Dep. 37:8-39:18.

China Airlines was subsequently dismissed from the case based upon the applicable Statute of Limitations.

Watkins based his reasoning on the aforementioned evidence produced by American, as well as the opinion of Dr. David Dodson. It became clear to him that Chou had not experienced DVT while on-board Flight 198; rather, he had suffered a simple heart attack brought about by occlusive coronary disease. Therefore, even though the Warsaw Convention applied and preempted any state or local law claims, there was no valid claim pursuant to the Convention due to the absence of the requisite “accident.” See discussion infra Part 11(A).

“If a service of the summons and complaint is not made upon defendant within 90 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court’s own initiative with notice to such party or upon motion.” Mass.R.Civ.P. 4(j).

The elements of a legal malpractice claim correspond quite closely with that of a traditional cause of action in negligence: (1) establishment of an attorney-client relationship, out of which arises a duty of reasonable care: (2) breach of that duty: and, (3) loss or damages suffered by the plaintiff which were proximately caused by the attorney’s subpar performance. Fishman v. Brooks, 396 Mass. 643, 646-47 (1986).

Thomas has argued that the flight crew ought to have noticed Chou’s distress at an earlier time. In attempt to bolster this argument, she submitted an affidavit taken from the passenger seated next to Chou on Flight 198. The passenger noted that, prior to take off, the deceased was “extremely nervous and fidgety and was coughing.” Aff. Peter Marchetti, PL’s Opp’n. Summ. J., Ex. 1. However, at no point did Mr. Marchetti alert the flight crew to Chou’s apparent distress. Moreover, during the motion hearing, it was admitted that Mr. Marchetti did not believe Chou was suffering from a medical emergency.